TAYLOR, C.J.
In this case, we review a trial court’s award of “reasonable” attorney fees as part of case-evaluation sanctions under MCR 2.403(0) calculated under some of the factors we listed in Wood v Detroit Automobile Inter-Ins Exch, 413 Mich 573; 321 NW2d 653 (1982), and Rule 1.5(a) of the Michigan Rules of Professional Conduct. We take this opportunity to clarify that the trial court should begin the process of calculating a reasonable attorney fee by determining factor 3 under MRPC 1.5(a), i.e., the reasonable hourly or daily rate customarily charged in the locality for similar legal services, using reliable surveys or other credible evidence. This number should be multiplied by the reasonable number of hours expended. This will lead to a more objective analysis. After this, the court may consider making adjustments up or down in light of the other factors listed in Wood and MRPC 1.5(a). In order to aid appellate review, the court should briefly indicate its view of each of the factors.
Given that the trial court made its decision without first determining the reasonable hourly or daily rate customarily charged in the locality for similar legal services, we vacate the lower court judgments regarding the case-evaluation sanctions and remand the case to the trial court to revisit the issue in light of the opinion we adopt today.
I. STATEMENT OF PROCEEDINGS
Plaintiff sued defendants in 2003 for dental malpractice in the Oakland Circuit Court. The case went to case evaluation and was evaluated at $50,000. Plaintiff accepted the award, but defendants rejected it. After a *523 2x/2-day trial, the jury returned a verdict in favor of plaintiff. The verdict, reduced to present value,[1] was $46,631.18:
After defendants’ motion for judgment notwithstanding the verdict or for a new trial was denied, plaintiff filed a motion in January 2005 seeking case-evaluation sanctions under MCR 2.403. Plaintiff sought $68,706.50 in attorney fees for time spent by four lawyers at the firm that represented him. In particular, plaintiff sought $450 an hour for the 102 hours[2] lead trial attorney Robert Gittleman claimed, $450 an hour for 6 hours claimed by another partner, $275 an hour for 59 hours attributable to one associate, and $275 an hour for 14 hours claimed by another associate. Plaintiffs motion was supported by several items, including Mr. Gittleman’s curriculum vitae showing his extensive experience in trying dental malpractice cases. Plaintiffs motion also attached copies of three circuit court judgments awarding Mr. Gittleman attorney fees: a 1985 case awarding $200 an hour, a 1998 case awarding $300 an hour, and a 2004 case awarding $400 an hour. Plaintiff also represented that the other partner had been practicing law for 35 years and had tried numerous cases that resulted in favorable verdicts. The motion also indicated that the associates had both tried personal injury cases to conclusion and that $275 an hour was the going rate for their work and research, which were necessitated by the evaluation rejection.
*524 Defendants presented numerous objections, arguing that the requested attorney fees would be highly unreasonable if they were awarded and specifically challenged the rate of $450 an hour and the fact that the fees sought exceeded the judgment. They contrasted the requested $450 an hour rate and the relatively small verdict with those in a recent Court of Appeals case, Zdrojewski v Murphy, 254 Mich App 50; 657 NW2d 721 (2002), in which a plaintiff’s attorney had sought $350 an hour but had only been awarded $150 an hour in case-evaluation sanctions in a personal injury case where the verdict had been $900,000. An objection was also made that some of the billings were duplicative, in that it was unnecessary for two lawyers to jointly try the same relatively simple two-day case.[3] Defense counsel indicated that his challenge was not so much to the hours claimed (other than the duplication claim), but to the rates sought. However, he did not seek an evidentiary hearing. Instead, he agreed to have the court decide the motion on the basis of what had been submitted.
The trial court indicated its belief that $450 an hour was a reasonable rate for Mr. Gittleman. The court took judicial notice of the fact that senior trial practitioners in Oakland County bill rates of about $450 an hour. The judge indicated that he had reviewed the billings and that he did not believe there was any duplication. The court said that Mr. Gittleman was a recognized practitioner in the area of dental malpractice and that he had a superlative standing in that area, having tried numerous cases. The court, however, did not make any findings relevant to the other partner or the associates. The *525 court concluded by stating that the entire amount claimed was reasonable and signed an order granting attorney fees of $65,556 (the claimed amount of $68,706.50 minus the stipulation to drop seven hours attributable to Mr. Gittleman).[4]
Defendants appealed in the Court of Appeals, arguing that the hourly rates were unreasonable, and attaching an article from the November 2003 issue of the Michigan Bar Journal[5] showing that the median billing rate for equity partners in Michigan was $200 an hour and $150 an hour for associates.
The panel affirmed in an unpublished opinion.[6] It rejected defendants’ claim that the amount of the attorney-fee award was excessive because it was based on unreasonable hourly rates. The Court of Appeals agreed with the trial court that $450 an hour was a reasonable rate for Mr. Gittleman. The panel conceded that the data submitted by defendants showed lower rates, but concluded that the data did not reflect the range of hourly rates charged by attorneys who specialize in complex litigation such as dental malpractice. It acknowledged that the trial court had not made any findings regarding the other three attorneys. Nevertheless, the panel found sufficient the trial court’s overall statements regarding the complexity of dental malpractice cases as well as the skill, time, and cost expended to obtain the favorable verdict. Finally, the Court of Appeals refused to follow Zdrojewski because there was evidence that courts of this state had consistently *526 awarded attorney fees for Mr. Gittleman’s services at hourly rates higher than the $150 an hour approved in Zdrojewski.
Defendants appealed in this Court, and we granted leave to appeal, limited to the case-evaluation-sanction issue, asking the parties to address several issues relating to the Wood factors, and also invited briefs from several amici curiae.[7]
II. STANDARD OF REVIEW
A trial court’s decision whether to grant case-evaluation sanctions under MCR 2.403(0) presents a question of law, which this Court reviews de novo. Casco Twp v Secretary of State, 472 Mich 566, 571; 701 NW2d 102 (2005); Allard v State Farm Ins Co, 271 Mich App 394, 397; 722 NW2d 268 (2006). We review for an abuse of discretion a trial court’s award of attorney fees and costs. Wood, 413 Mich at 588. An abuse of discretion occurs when the trial court’s decision is outside the range of reasonable and principled outcomes. Maldonado v Ford Motor Co, 476 Mich 372, 388; 719 NW2d 809 (2006).
III. LEGAL BACKGROUND
A. PURPOSE OF THE RULE
The general “American rule” is that “attorney fees are not ordinarily recoverable unless a statute, court rule, or common-law exception provides the contrary.” Nemeth v Abonmarche Dev, Inc, 457 Mich 16, 37-38; 576 NW2d 641 (1998); Haliw v Sterling Hts, 471 Mich 700, 706; 691 NW2d 753 (2005). Consistently with the American rule, this Court has specifically authorized *527 case-evaluation sanctions through court rule, allowing the awarding of reasonable attorney fees to promote early settlements.[8] The examination of those rules and the extent to which fees can be awarded is at issue in this case.
MCR 2.403 is the Michigan court rule regarding case evaluation. The rule holds that if both parties accept a case evaluation, the action is considered settled and judgment will be entered in accordance with the evaluation.[9] However, if one party accepts the award and one rejects it, as happened here, and the case proceeds to a verdict, the rejecting party must pay the opposing party’s actual costs unless the verdict is, after several adjustments, more than 10 percent more favorable to the rejecting party than the case evaluation.[10] Actual costs are defined in MCR 2.403(0) (6) as those costs taxable in any civil action and “a reasonable attorney fee based on a reasonable hourly or daily rate as determined by the trial judge for services necessitated by the rejection of the case evaluation.”
The purpose of this fee-shifting provision is to encourage the parties to seriously consider the evaluation and provide financial penalties to the party that, as it *528 develops, “should” have accepted but did not. This encouragement of settlements is traditional in our jurisprudence, as it deters protracted litigation with all its costs and also shifts the financial burden of trial onto the party who imprudently rejected the case evaluation. Rohl v Leone, 258 Mich App 72, 75; 669 NW2d 579 (2003); Bennett v Weitz, 220 Mich App 295, 301; 559 NW2d 354 (1996). This rule, however, is not designed to provide a form of economic relief to improve the financial lot of attorneys or to produce windfalls.[11] Rather, it only permits an award of a reasonable fee, i.e., a fee similar to that customarily charged in the locality for similar legal services, which, of course, may differ from the actual fee charged[12] or the highest rate the attorney might otherwise command. As Coulter v Tennessee, 805 F2d 146, 148 (CA 6, 1986), explains, reasonable fees “are different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a region.”
B. PLAINTIFF WAS ENTITLED TO CASE-EVALUATION SANCTIONS
Defendants here have correctly conceded that case-evaluation sanctions were applicable because, even ignoring the costs and interest of $23,623.99 that are to be added to the verdict, the verdict as reduced to its present value of $46,631.18 was not more than 10 percent less than the $50,000 case-evaluation amount.
C. DETERMINING A REASONABLE ATTORNEY FEE
As all agree, the burden of proving the reasonableness of the requested fees rests with the party request *529 ing them. Petterman v Haverhill Farms, Inc, 125 Mich App 30, 33; 335 NW2d 710 (1983).[13] In Michigan, the trial courts have been required to consider the totality of special circumstances applicable to the case at hand. Smolen v Dahlmann Apartments, Ltd, 186 Mich App 292, 297; 463 NW2d 261 (1990); Hartman v Associated Truck Lines, 178 Mich App 426, 431; 444 NW2d 159 (1989). Wood listed the following six factors to be considered in determining a reasonable attorney fee:
(1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client. [Wood, 413 Mich at 588 (citation omitted)].[14]
The trial courts have also relied on the eight factors listed in Rule 1.5(a) of the Michigan Rules of Professional Conduct, see, e.g., Dep’t of Transportation v Randolph, 461 Mich 757; 610 NW2d 893 (2000), and In re Condemnation of Private Prop for Hwy Purposes (Dep’t of Transportation v D & T Constr Co), 209 Mich App 336, 341-342; 530 NW2d 183 (1995), which overlap the Wood factors and include:
*530 (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent. [MRPC 1.5(a).]
In determining “the fee customarily charged in the locality for similar legal services,” the trial courts have routinely relied on data contained in surveys such as the Economics of the Law Practice Surveys that are published by the State Bar of Michigan. See, e.g., Zdrojewski, 254 Mich App at 73; Temple v Kelel Distributing Co Inc, 183 Mich App 326, 333; 454 NW2d 610 (1990). The above factors have not been exclusive, and the trial courts could consider any additional relevant factors. Wood, 413 Mich at 588.
IV ANALYSIS
We conclude that our current multifactor approach needs some fine-tuning. We hold that a trial court should begin its analysis by determining the fee customarily charged in the locality for similar legal services, i.e., factor 3 under MRPC 1.5(a). In determining this number, the court should use reliable surveys or *531 other credible evidence of the legal market. This number should be multiplied by the reasonable number of hours expended in the case (factor 1 under MRPC 1.5[a] and factor 2 under Wood). The number produced by this calculation should serve as the starting point for calculating a reasonable attorney fee. We believe that having the trial court consider these two factors first will lead to greater consistency in awards. Thereafter, the court should consider the remaining WoodfMRVC factors to determine whether an up or down adjustment is appropriate. And, in order to aid appellate review, a trial court should briefly discuss its view of the remaining factors.[15]
The reasonable hourly rate represents the fee customarily charged in the locality for similar legal services, which is reflected by the market rate for the attorney’s work. “The market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question.” Eddleman v Switchcraft, Inc, 965 F2d 422, 424 (CA 7, 1992) (citation and quotation omitted). We emphasize that “the burden is on the fee applicant to produce satisfactory evidence — in addition to the attorney’s own affidavits — that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.” Blum v Stenson, 465 US 886; 895 n 11; 104 S Ct 1541; 79 L Ed 2d 891 (1984). The fees customarily charged in the locality for similar legal services can be established by testimony or *532 empirical data found in surveys and other reliable reports. But we caution that the fee applicant must present something more than anecdotal statements to establish the customary fee for the locality. Both the parties and the trial courts of this state should avail themselves of the most relevant available data. For example, as noted earlier, in this case defendant submitted an article from the Michigan Bar Journal regarding the economic status of attorneys in Michigan.[16] By recognizing the importance of such data, we note that the State Bar of Michigan, as well as other private entities, can provide a valuable service by regularly publishing studies on the prevailing market rates for legal services in this state. We also note that the benefit of such studies would be magnified by more specific data relevant to variations in locality, experience, and practice area.
In considering the time and labor involved (factor 1 under MRPC 1.5[a] and factor 2 under Wood) the court must determine the reasonable number of hours expended by each attorney.[17] The fee applicant must submit detailed billing records, which the court must examine and opposing parties may contest for reasonableness. The fee applicant bears the burden of supporting its claimed hours with evidentiary support. If a factual dispute exists over the reasonableness of the hours billed or hourly rate claimed by the fee applicant, the party opposing the fee request is entitled to an evidentiary hearing to challenge the applicant’s evidence and to present any countervailing evidence.
*533 Multiplying the reasonable hourly rate by the reasonable hours billed will produce a baseline figure. After these two calculations, the court should consider the other factors and determine whether they support an increase or decrease in the base number.
Having clarified how a trial court should go forward in calculating a reasonable attorney fee, we find it appropriate to vacate the award and remand this case to the trial court for reconsideration under this opinion. We offer the following observations in order to provide guidance to the trial court.
In making its ruling, the trial court indicated it was taking judicial notice of the fact that top trial attorneys in Oakland County charge $450 an hour or more.[18] While we do not doubt that some trial attorneys have such rates, the fee customarily charged in the locality for similar legal services, which likely is different, should be the measure. That is, reasonable fees are different from the fees paid to the top lawyers by the most well-to-do clients. Coulter, supra. The trial court also erred in relying on previous awards Mr. Gittleman obtained without considering whether those fees might have been justified by the particular circumstances of the earlier cases, such as the complexity and the skill required. Moreover, the trial court erred when it conclusorily stated that Mr. Gittleman had tried the case in a “professional manner,” without further explanation, because this is something all attorneys should be expected to do.
*534 As previously noted, the trial court only made findings regarding Mr. Gittleman. On remand, the court should be careful to perform a separate analysis with reference to the other three attorneys, considering both the hourly rates and the number of hours reasonably expended, and should consider whether it was reasonable for plaintiffs firm to have two lawyers “on the clock” during the trial.
We reiterate that the goal of awarding attorney fees under MCR 2.403 is to reimburse a prevailing party for its “reasonable” attorney fee; it is not intended to “replicate exactly the fee an attorney could earn through a private fee arrangement with his client.”[19] We also caution the courts to avoid duplicative consideration of the factors mentioned above.[20]
*535 V RESPONSE TO THE DISSENT
The dissent’s primary complaint seems to be that a “reasonable fee” for an exceptional lawyer cannot be determined by using the fee charged by the average attorney. But Wood factor 1 mentions the professional standing and experience of the attorney, Wood factor 2 mentions the skill involved, and MRPC 1.5(a)(7) speaks of “the experience, reputation, and ability of the lawyer.” These factors allow an upward adjustment for the truly exceptional lawyer.
The dissent criticizes our use of the market rate for attorney services to determine a reasonable rate, stating that “the market rate for an individual attorney’s work is not some figure that can be plucked from a reference manual or interpolated from a statistical graph.” Post at 551. To an extent, we agree; see note 18 of this opinion, explaining that the fee charged by top trial lawyers in Oakland County is not a proper fact for judicial notice. This is not an exact science; if it were, no factors or analysis would be required. We merely aim to provide a workable, objective methodology for assessing reasonable attorney fees that Michigan courts can apply consistently to our various fee-shifting rules and statutes. To that end, we are persuaded by the guidance offered by the United States Supreme Court in Blum, and we note that the dissent offers no similar, countervailing guidance.
*536 The dissent agrees with the Supreme Court’s assessment in Blum that the market rate, although not always easily discerned, is a “valid inquiry.” Post at 552. Nevertheless, it rejects the principled mechanism the Blum Court chose to best conduct the “valid inquiry” into the market rate. Post at 552. We, however, accept the Blum Court’s resolution, placing the burden on the fee applicant “to produce satisfactory evidence — in addition to the attorney’s own affidavits — that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.” Blum, supra at 895 n 11. The dissent concedes that “assessing that rate should include comparisons with rates for similar services,” post at 552, but offers no rubric to guide Michigan courts in doing so. Unlike the dissent, we choose to provide the guidance that has been, and the dissent would allow to remain, sorely lacking for the many Michigan courts that are asked to impose “reasonable attorney fees” under our fee-shifting rules and statutes.
The dissent also faults us for using the fee customarily charged in the locality for similar legal services as a starting point. See post at 546. We see no fault in providing an objective baseline, i.e., a starting point, to aid trial and appellate courts alike in assessing a “reasonable fee.” Whimsy is a double-edged sword. If a trial court awarded a highly experienced and skilled attorney, such as Mr. Gittleman, a “reasonable attorney fee” at a rate of $100 an hour — a rate well below the $150 an hour median rate for associate attorneys in Michigan[21] — we would have the same concerns with the absence of an objective framework to assess such a judgment. An objective starting point, at a minimum, provides a more concrete basis for setting and reviewing *537 a reasonable attorney fee. Again, we reject the dissent’s argument to leave Michigan courts without guidance.
The dissent asserts that our decision is somehow inconsistent with Randolph, in which we rejected the federal lodestar method for calculating the reasonableness of an attorney fee under our condemnation statute. In Randolph, we specifically noted that MCL 213.66(3) requires consideration of whether actual fees are reasonable, and that this is different from fee-shifting statutes that simply authorize the trial court to award “reasonable attorney fees” without regard to the fees actually charged. Randolph, 461 Mich at 765-766. Contrary to the dissent’s assertion, our opinion today does not contradict, undermine, or overrule Randolph.
VI. CONCLUSION
In determining a reasonable attorney fee, a trial court should first determine the fee customarily charged in the locality for similar legal services. In general, the court shall make this determination using reliable surveys or other credible evidence. Then, the court should multiply that amount by the reasonable number of hours expended in the case. The court may consider making adjustments up or down to this base number in light of the other factors listed in Wood and MRPC 1.5(a). In order to aid appellate review, the court should briefly indicate its view of each of the factors.
The judgments of the Court of Appeals and the trial court regarding the attorney-fee issue are vacated, and the case is remanded to the trial court for reconsideration in light of this opinion.
YOUNG, J., concurred with TAYLOR, C.J.

 All but $300 of the verdict consisted of future noneconomic damages, which were set at $2,800 a year for the remaining 36 years of plaintiffs life expectancy. Pursuant to MCL 600.6306, those future noneconomic damages were reduced to their present value.

 Plaintiff stipulated a reduction of seven hours from the time Mr. Gittleman claimed after defendants objected to the claim.

 For example, Mr. Gittleman charged eight hours for a full day of trial on December 17, 2004, and one of the associates also charged eight hours for that same day. Further, Mr. Gittleman billed five hours for the third day of trial while an associate charged eight hours for the same day.

 Plaintiff was awarded $23,623.99 in costs.

 Stiffman, A snapshot of the economic status of attorneys in Michigan, 82 Mich B J 20 (November 2003).

 Smith v Khouri, unpublished opinion per curiam, issued November 16, 2006 (Docket No. 262139).

 479 Mich 852 (2007).

 In 2000, the name of the process described in MCR 2.403 was changed from “mediation” to “case evaluation.” The term “mediation” now applies to the process described in MCR 2.411.

 MCR 2.403(M)(1).

 MCR 2.403(O)(3) provides that a verdict must be adjusted by adding to it assessable costs and interest and that, after this adjustment, the verdict is considered more favorable to a defendant “if it is more than 10 percent below the evaluation____” As we explained in Haliw, 471 Mich at 711, actual costs do not include attorney fees incurred when responding to appeals. Moreover, as explained in Rafferty v Markovitz, 461 Mich 265, 273 n 6; 602 NW2d 367 (1999), attorney fees are not allowed under the court rule if they have already been recovered pursuant to a statute. As we held in Rafferty, double recovery of attorney fees under two different authorities is not appropriate, even if the authorities advance different purposes.

 See Pennsylvania v Delaware Valley Citizens’ Council for Clean Air, 478 US 546, 565; 106 S Ct 3088; 92 L Ed 2d 439 (1986) (“[T]hese [attorney-fee shifting] statutes were not designed as a form of economic relief to improve the financial lot of attorneys ....”).

 “Reasonable fees are not equivalent to actual fees charged.” Zdrojewski, 254 Mich App at 72.

 Accord Hensley v Eckerhart, 461 US 424, 433; 103 S Ct 1933; 76 L Ed 2d 40 (1983) (stating that the party seeking the fee award bears the burden of proving the reasonableness of the hours worked and the hourly rates claimed); Blum v Stenson, 465 US 886, 896 n 11; 104 S Ct 1541; 79 L Ed 2d 891 (1984).

 These factors were traceable to Crawley v Schick, 48 Mich App 728, 737; 211 NW2d 217 (1973). Crawley relied in part on then-applicable Disciplinary Rule 2-106(B) of the Code of Professional Responsibility and Ethics.
We also stated in Wood that a trial court is not limited to those factors in making its determination and that the trial court need not detail its findings on each specific factor considered. Wood, 413 Mich at 588. We clarify today that in order to aid appellate review, the court should briefly address on the record its view of each of the factors.

 Wood, 413 Mich at 588, held that trial courts were “not limited to [the six listed] factors in making [their] determination[s].” To the extent a trial court considers any factor not enumerated in Wood or MRPC 1.5(a), the court should expressly indicate this and justify the relevance and use of the new factor.

 See n 5, supra. The trial court did not have this report. It was first submitted to the Court of Appeals.

 Aforman, v Housing Auth of Montgomery, 836 F2d 1292, 1301 (CA 11, 1988), quoting Hensley, 461 US at 434 (in determining hours reasonably expended, the Court should exclude “excessive, redundant or otherwise unnecessary” hours regardless of the attorneys’ skill, reputation or experience).

 We note that the hourly rate charged by top trial attorneys in Oakland County was not a proper fact for judicial notice. A judicially noticed fact must be “one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.” MRE 201(b).

 Delaware Valley, 478 US at 565; see also Cleary v Turning Point, 203 Mich App 208, 212; 512 NW2d 9 (1993).

 Factor 3 under Wood, 413 Mich at 588, and factor 4 under MRPC 1.5(a), is “the amount in question and the results achieved.” Although this factor may be relevant in other situations, we conclude that it is not a relevant consideration in determining a reasonable attorney fee for case-evaluation sanctions. As stated, the purpose of MCR 2.403(0) is to encourage serious consideration of case-evaluation awards and penalize a party that “should have” accepted the case’s evaluation. The rejecting party that does not achieve a more favorable result must pay reasonable attorney fees “for services necessitated by the rejection....” MCR 2.403(0X6). It would be inconsistent with MCR 2.403(0) to reduce the accepting party’s reasonable attorney fees “for services necessitated by the rejection” on the basis of the amount in question or the results achieved. If we were to do so, the accepting party could have properly evaluated the case’s value, yet be forced to incur additional fees, potentially in excess of the case’s value. Reducing the accepting party’s reasonable attorney fees necessitated by the rejection because they exceed or are disproportionate to the value the accepting party correctly assessed undermines the rule. MCR 2.403(0) penalizes the rejecting party who incorrectly valued the case, not the accepting party who correctly assessed the case’s value at a much earlier and more efficient time. Reducing the accepting party’s reasonable attorney fees on the basis of proportionality simply encourages the inefficiency the rule seeks to combat.
*535 Although factor 8 under MRPC 1.5(a), “whether the fee is fixed or contingent,” may be relevant in other situations, we conclude that it is not relevant in determining a reasonable attorney fee for case-evaluation sanctions. Again, sanctions under MCR 2.403 are to reimburse a party for reasonable legal fees for services necessitated by the rejection of the case evaluation. Whether the attorney-fee agreement is fixed or contingent is unrelated to the legal services necessitated by the rejection of a case evaluation.

 See Stiffman, supra.