# STATE OF MICHIGAN

# COURT OF APPEALS

MARK PISCIOTTA and DARK HORSE
DEVELOPMENT GROUP, LLC,

UNPUBLISHED
October 5, 2017

Plaintiffs/Counter-Defendants-
Appellants,

v

No. 332300
Genesee Circuit Court
LC No. 14-103738-CB

RONALD LAWRENCE KARDOS,

Defendant/Counter-Plaintiff-
Appellee.

Before: GADOLA, P.J., and METER and FORT HOOD, JJ.

PER CURIAM.

Plaintiffs appeal as of right an order "settling attorney fees [and] reinstatement amount and for payment of received rents in lieu of judgment of foreclosure." We affirm.

After meeting at a crowdfunding seminar in April 2012, the individual parties[1] became business partners, with plaintiff Mark Pisciotta locating and managing properties in Flint, and defendant Ronald Lawrence Kardos being the funding source for the venture. After a few weeks, Kardos informed Pisciotta that he wanted out of the venture. Pisciotta requested that Kardos lend the money in exchange for a 20% return, instead of pulling out of the venture. Kardos agreed to lend money for homes under contract to avoid losing deposits, retained a lawyer, and had mortgages and promissory notes prepared and executed. Some of the mortgages applied to Pisciotta and others to Dark Horse Development Group, LLC. Each of the loans was cross-collateralized with the others. Thereafter, Pisciotta implored Kardos to supply more funding for additional homes. Kardos was initially reluctant, but eventually agreed when Pisciotta offered Kardos an equity share in the event of sale of the properties. Later, Pisciotta demanded a lower monthly payment, and Kardos accommodated this. Pisciotta then requested that Kardos "over advance" him more money to make improvements to the properties. Kardos agreed to this as well.

---

[1] Pisciotta is the sole owner of Dark Horse Development Group, LLC.

Pisciotta paid his debt obligations for seven months, then defaulted. Pisciotta tried to convince Kardos to restructure the loans, but Kardos refused. In response, Pisciotta threatened Kardos with litigation, arguing that the loans were usurious. Kardos subsequently began foreclosing on four of the properties, by advertisement. On October 28, 2014, plaintiffs filed a complaint and moved for a preliminary injunction and restraining order to prevent Kardos from foreclosing on the properties by advertisement, alleging that the loans were usurious. The trial court granted a temporary restraining order, only to dissolve it and reschedule the foreclosure sale after hearing plaintiffs' motion on November 10, 2014. At the hearing, the parties argued about the effect the equity-sharing agreements had on the usury claim and the harm of allowing the foreclosures by advertisement to happen. The court found that defendant's expert's testimony stating that the interest rates on the properties did not exceed 25% was unrefuted by plaintiffs and that the equity-sharing agreements should not be considered when calculating the effective interest rates of the loans. It denied the preliminary injunction.

Subsequently, Kardos moved for summary disposition, and the court granted the motion. The parties argued whether to follow *Holland v Michigan National Bank-West*, 166 Mich App 245; 420 NW2d 173 (1988), and *Krause v Griffis*, 178 Mich App 111; 443 NW2d 444 (1989).[2] The court also considered whether the present case dealt with a business entity under MCL 438.61 and whether the notarized mortgages counted as sworn statements under this statute. The court found that the loans to Dark Horse were "certainly" not usurious because they were made to a limited liability company. The court also found that the loans made to Pisciotta were not usurious under *Krause, Holland,* and the business-entity exception of MCL 438.61. Lastly, the court found that because there were too many uncertainties about the value of the properties if and when Pisciotta decided to sell them, the equity-sharing agreements could not be calculated into the interest rates for the properties when determining whether the loans were usurious.[3]

Kardos had filed a counter-complaint seeking judicial foreclosure on the remainder of the properties. He filed a motion for summary disposition for judicial foreclosure pursuant to MCL 600.3115 on August 24, 2015. On September 11, 2015, the court granted Kardos's motion for summary disposition regarding judicial foreclosure. This order preserved plaintiffs' right to appeal the prior rulings of the lower court and any damages incurred based on the lower court's rulings in the event that the appeal was successful. Plaintiffs moved to settle attorney fees on

---

[2] In *Holland*, 166 Mich App at 258-261, this Court found that the Hollands' loan fell within the intent of the business-entity exception to usury laws—outlined in MCL 438.61—because it was made for a business purpose, and that the Hollands were estopped from asserting the lack of strict compliance with the "sworn statement" language of MCL 438.61(1)(a) because they did not protest when they acquiesced to the procedures used in the making of the statement. In *Krause*, 178 Mich App at 115-116, the Court applied the business-entity exception in MCL 438.61 to the loan at issue because it was made to purchase property to be operated as a business and the signed, notarized land contract made reference to the property as "income potential" property.

[3] An additional count of the complaint remained outstanding at the time of the court's grant of summary disposition, but the court later dismissed this remaining count as well.

October 30, 2015, because the parties had not been able to resolve the amounts owed for attorney fees. Plaintiffs requested that the court determine the reasonableness of Kardos's attorney fees and reduce the hourly rate to that customarily charged in the locality. During the November 16, 2015, hearing, the lower court ruled that plaintiffs should not receive a reduction for the attorney fees paid by Kardos in the purchase of the four properties because the foreclosures by advertisement were "done" and "taken care of." The lower court also determined that Genesee County was the appropriate county to use to determine reasonable attorney fees.

Kardos also filed a motion to settle the differences in amounts to reinstate some of the loans. The parties determined the remaining funds plaintiffs owed Kardos. On March 14, 2016, the court issued an order "settling attorney fees [and] reinstatement amount and for payment of received rents in lieu of judgment of foreclosure." After the order was entered, the loans were reinstated. Plaintiffs subsequently filed their claim of appeal.

Plaintiffs first contend that the trial court erred in determining that the business-entity exception to usury laws applied to the loans in this case because Kardos did not obtain a sworn statement as required by MCL 438.61(1)(a).

This issue requires us to interpret MCL 438.61. Statutory interpretation is reviewed de novo. *Czymbor's Timber, Inc v City of Saginaw*, 478 Mich 348, 354; 733 NW2d 1 (2007). We also review de novo a trial court's ruling on a motion for summary disposition. *Id*.

The trial court indicated that the loans were not usurious because the business-entity exception in MCL 438.61(1)(a) applied. MCL 438.61 states:

(1) As used in this act:

(a) "Business entity" means a corporation, trust, estate, partnership, cooperative, or association or a natural person who furnishes to the extender of the credit a sworn statement in writing specifying the type of business and business purpose for which the proceeds of the loan or other extension of credit will be used. An exemption under this act does not apply if the extender of credit has notice that the person signing the sworn statement was not engaged in the business indicated in the sworn statement.

(b) "Related entity" means a business entity other than a natural person whose members, owners, partners, or limited partners include a state or national chartered bank, a state or federal chartered savings bank, a state or federal chartered savings and loan association, a state or federal chartered credit union, an insurance carrier, or finance subsidiary of a manufacturing corporation.

(2) Notwithstanding [MCL 438.31 through MCL 438.33] and [MCL 438.41 through MCL 438.42], but subject to any other applicable law of this state or of the United States which regulates the rate of interest, it is lawful in connection with an extension of credit to a business entity by a state or national chartered bank, a state or federal chartered savings bank, a state or federal chartered savings and loan association, a state or federal chartered credit union,

finance subsidiary of a manufacturing corporation, or a related entity for the parties to agree in writing to any rate of interest.

(3) Notwithstanding [MCL 438.31 through MCL 438.33], it is lawful in connection with an extension of credit to a business entity by any person other than a state or nationally chartered bank, a state or federal chartered savings bank, a state or federal chartered savings and loan association, a state or federal chartered credit union, insurance carrier, finance subsidiary of a manufacturing corporation, or a related entity for the parties to agree in writing to any rate of interest not exceeding the rate allowed under [MCL 438.41 through MCL 438.42].

If plaintiffs are business entities under MCL 438.61, the loans in question are not usurious.[4]

In *Krause*, 178 Mich App at 115, the applicability of the business-entity exception was established by evidence that the property covered by the transaction was being operated as a foster-care facility and that the land contract, which was signed by the purchasers and notarized, made reference to the facility as "income potential" property. The present case is analogous to *Krause*. The cross-collateralization provisions in the mortgage documents indicate that the properties were to be leased as part of a large-scale leasing business managed by plaintiffs. Just as the language of Krause's signed, notarized land contract indicated that the land was being used for a business purpose, the language of Pisciotta's signed, notarized mortgages indicate that the properties were being used for a business purpose.

Plaintiffs rest their appellate argument on their contention that we should disregard the holding of *Krause*; plaintiff notes that we are not required to follow it because it was issued before November 1, 1990. See MCR 7.215(J)(1). We decline plaintiffs' invitation to ignore the rule of stare decisis. See MCR 7.215(C)(2) ("[a] published opinion of the Court of Appeals has precedential effect under the rule of stare decisis"). The ruling of *Krause*, especially as applied to the present case—involving clear, notarized, signed mortgage documents evidencing a business purpose, analogous to the land contract in *Krause*—is not unworkable or badly reasoned such that stare decisis should be disregarded. See, e.g., *Robinson v Detroit*, 462 Mich 439, 464; 613 NW2d 307 (2000).[5]

Plaintiffs next argue that the trial court erred in using $250 an hour as the rate for Kardos's attorney fees. This Court reviews awards of attorney fees and costs for an abuse of discretion. *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008). An abuse of discretion

---

[4] We note that plaintiffs focus their arguments on loans to Pisciotta, arguing that a sworn statement was necessary to avoid the usury laws for these loans because Pisciotta is a "natural person." However, Kardos also made loans to Dark Horse, and plaintiffs do not raise a sufficient argument to challenge those loans.

[5] We note that MCL 438.61(1)(a) does not specify what form the sworn statement must take.

-4-

occurs when a court chooses an outcome outside the range of principled and reasonable outcomes. *Id.*

Under MRPC 1.5(a), factors to consider in determining proper attorney fees are: (1) the skill, time, and labor involved in the litigation; (2) the likelihood, if apparent to the client, that the acceptance of the employment will preclude other employment by the lawyer; (3) the fee customarily charged in that locality for similar services; (4) the amount in question and the results achieved; (5) the time limitations imposed by the client or the circumstances; (6) the nature and length of the professional relationship with the client; (7) the professional standing and experience of the attorney; and (8) whether the fee is fixed or contingent. See also *Smith*, 481 Mich at 529-530 (discussing various factors).

Plaintiffs contend that once the trial court determined that the customary fee in Genesee County was $217 an hour, it was obligated, when adjusting this base fee, to explicitly explain its reasoning on applicable factors. It is true that in *Smith*, 481 Mich at 537, the Court stated that when a court deviates from a fee customary in a particular locality, "[i]n order to aid appellate review, the court *should* briefly indicate its view of each of the factors." (Emphasis added.)

While the trial court in this case may not have performed ideally by failing to explain its adjustment on the record, it is a court's failure to consider the factors, not its failure to discuss its view of the factors, that constitutes an abuse of discretion, and because the court explicitly stated that it was familiar with the applicable case law, there is no evidence to suggest that the court completely failed to consider the factors. The court stated, "I know the case law, so we don't have to spend a lot of time arguing about [cases dealing with the factors]." The court appeared to be making a compromise between the hourly rates the parties were arguing ($295 an hour and $215 an hour), and $250 an hour is within the range of principled outcomes in light of the circumstances surrounding Kardos's counsel and his work.

Plaintiffs lastly argue that the trial court should have reduced the attorney fees awarded to Kardos to account for the four properties that were foreclosed by advertisement. Plaintiffs stated that, before December 3, 2014, there were 22 properties involved in this litigation. On December 3, 2014, four of the properties were sold at sheriff's sales, and Kardos received all necessary payment for the fees he incurred related to the four properties that were foreclosed by advertisement. Plaintiffs argue that because these four properties represented 18% of the properties in this litigation, the court should have reduced by 18% Kardos's award for all services rendered before December 3, 2014.[6]

Under Michigan's foreclosure laws, a mortgagee is not entitled to full attorney fees when foreclosing by advertisement, as he would be in the case of judicial foreclosure. The mortgagee is entitled to only the amounts specified in MCL 600.2431:

> (2) Where an attorney is employed to foreclose a mortgage by advertisement, an attorney's fee, not to exceed any amount which may be

---

[6] Plaintiffs cite no authorities to support their argument on this issue.

provided for in the mortgage, may be included as part of the expenses in the amount bid upon such sale for principal and interest due thereon in the following amounts:

      (a) for all sums of $1,000.00 or less, $25.00.

      (b) for all sums over $1,000.00 but less than $5,000.00, $50.00

      (c) for all sums of $5,000.00 or more, $75.00.

The trial court determined that plaintiffs were not entitled to an 18% reduction in attorney fees to account for attorney fees related to the four properties foreclosed by advertisement. Plaintiffs' argument that the total attorney fees charged to Kardos's litigation before the December 2014 foreclosures should be reduced by 18% is mathematically erroneous. Reducing the total amount of defense counsel's fees before the foreclosures by 18% would be appropriate if 18% of defense counsel's time and transactions during that time were related to the foreclosures by advertisement. It is not appropriate simply because four properties represent 18% of 22 properties.

Plaintiffs would be entitled to a reduction if defense counsel charged Kardos the full amount of attorney fees for the properties foreclosed by advertisement instead of the amounts specified by MCL 600.2431(2). However, this is not the case. The parties do not dispute that defendant was charged only $300 ($75 for each foreclosure by advertisement), and not his attorney's hourly rates, for the foreclosures by advertisement. As such, arguing that defense counsel's fees should be reduced to account for attorney fees related to the properties foreclosed by advertisement is illogical, and the declination to reduce the attorney fees incurred before the foreclosure sale of the four properties by 18% does not render the court's determination of the fee award an abuse of discretion.

      Affirmed.

                              /s/ Michael F. Gadola
                              /s/ Patrick M. Meter
                              /s/ Karen M. Fort Hood