*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

FAIRLANE WOODS ASSOCIATION,

      Plaintiff-Appellee,

v

JAMEL WHITE, and JENNIFER WHITE,

      Defendants-Appellants.

UNPUBLISHED
May 7, 2019

No. 339458
Wayne Circuit Court
LC No. 14-012433-CH

Before: MURRAY, C.J., and JANSEN and RIORDAN, JJ.

PER CURIAM.

Defendants appeal by leave granted[1] the May 1, 2017 trial court order awarding plaintiff, Fairlane Woods Association, $13,942.02 to repair portions of a condominium unit owned by defendants, $24,000 for attorney fees, and $4,021.43 in costs. The trial court entered the order after granting summary disposition in favor of plaintiff on the issue of liability pursuant to MCR 2.116(C)(10). For the reasons set forth in this opinion, we affirm in part, and reverse in part, the trial court's order and remand to the trial court for entry of an order awarding plaintiff $6,575.52 in repair costs, $24,000 for attorney fees, and $4,021.43 for costs.

## I. RELEVANT FACTUAL BACKGROUND

Plaintiff, a Michigan nonprofit corporation, administers the affairs of the Fairlane Woods Condominium, a 63-unit residential condominium development in Dearborn. In January 2014, defendants owned an individual condominium unit in the development located at 5103 Fairlane Woods Drive (the unit).

In January 2014, when defendants were in Ohio, water damage was discovered in defendants' unit after the water was left on without any heat in the unit and a pipe burst. In

---

[1] See *Fairlane Woods Association v White*, unpublished order of the Court of Appeals, entered October 4, 2017 (Docket No. 339458).

September 2014, plaintiff commenced this suit, alleging that on or about January 13, 2014, defendants failed to heat the unit "causing one or more water pipes to burst." Plaintiff alleged that the water loss was "catastrophic" and caused damage to defendants' unit and to an adjoining unit. Plaintiff sought injunctive relief pursuant to Article IX, § 1(A) of the Condominium Bylaws (bylaws) and MCL 559.206. Plaintiff alleged that defendants were in violation of provisions of the bylaws requiring defendants to maintain their unit in a safe, clean, and sanitary condition. Plaintiff alleged that defendants' failure to remedy the condition amounted to a violation of the Michigan Condominium Act, MCL 559.101 *et seq*. and the bylaws. Plaintiff requested preliminary and permanent injunctions enjoining defendants from their continued violations of the bylaws. Plaintiff maintained that defendants were required to hire a professional contractor approved by plaintiff or permit plaintiff to enter the unit and conduct the remediation at defendants' expense. Plaintiff's insurance provider eventually denied coverage for the water damage.

In August 2016, the trial court granted plaintiff's motion for summary disposition, pursuant to MCR 2.116(C)(10) on the issue of liability. The trial court held that there were no genuine issues of material fact regarding whether defendants were responsible for the repair costs for the water damage. The trial court also held that plaintiff was entitled to repair costs, attorney fees, and costs pursuant to the bylaws. Following a four-day evidentiary hearing, the trial court awarded plaintiff $13,942.02 for repairs to the common elements of the unit, $24,000 for attorney fees, and $4,021.43 for costs. The trial court denied defendants' motion for reconsideration. This appeal followed.

## II. SUMMARY DISPOSITION ON LIABILITY

On appeal, defendants contend that the trial court erred in granting summary disposition in favor of plaintiff. We disagree.

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018). We review the entire record to determine whether defendant is entitled to summary disposition. *Id*. Here, plaintiff moved for summary disposition pursuant to MCR 2.116(C)(10). The applicable standard of review is as follows:

> A motion for summary disposition brought pursuant to MCR 2.116(C)(10) tests the factual support for a claim. Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. A motion pursuant to MCR 2.116(C)(10) is reviewed by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. It is well settled that the circuit court may not weigh the evidence or make determinations of credibility when deciding a motion for summary disposition. Moreover, a court may not make findings of fact; if the evidence before it is conflicting, summary disposition is improper. [*Id*. at 605-606 (quotation marks and citations omitted).]

In this case, plaintiff filed a complaint seeking relief for defendants' noncompliance with the governing bylaws and the master deed. MCL 559.206 provides a means of relief in circumstances involving noncompliance by a "co-owner" of a condominium development in relevant part as follows:

> (a) Failure to comply with any of the terms or provisions of the condominium documents, shall be grounds for relief, which may include without limitations, an action to recover sums due for damages, injunctive relief, foreclosure of lien if default in payment of assessment, or any combination thereof.

> (b) In a proceeding arising because of an alleged default by a co-owner, the association of co-owners or the co-owner, if successful, shall recover the costs of the proceeding and reasonable attorney fees, as determined by the court, to the extent the condominium documents expressly so provide.

In this case, the trial court did not err in holding that there was no genuine issue of material fact regarding whether defendants were in violation of the terms and provisions of the master deed and the bylaws; therefore, the trial court did not err in granting plaintiff injunctive relief pursuant to MCL 559.206. Under the master deed and the bylaws, there was no genuine issue of material fact that defendants were responsible for the costs of the repairs to the common elements of the unit, that plaintiff was responsible for repairing the common elements, and that plaintiff had the right to access the unit to conduct the repairs and maintenance. There was no dispute here that the water pipes in defendants' unit froze and burst and caused significant damage to the unit and to the common elements of the unit. While defendants disputed the cause of the water leak and denied responsibility, regardless of whether defendants turned off the water and did not act negligently, the damage arose from defendants' ownership of the unit. Therefore, regardless of fault, under Article VI, § 14 of the bylaws, and Article IV, § 1(C)(3) of the master deed, defendants, as owners of the unit, were responsible for covering the costs of repairs to the unit and to the common elements in the unit.

Similarly, under the master deed and the bylaws, there was no question of fact regarding which party was responsible for performing repairs to the common elements. Under Article IV, § 1(C)(2) of the master deed, and Article V, § 3 of the bylaws, plaintiff was responsible for performing repairs to the common elements of the unit and defendants were responsible for performing repairs to the remainder of the unit. Moreover, there was no question of fact that under Article VII, § 3 of the master deed plaintiff had an ongoing easement to access defendants' unit to repair common elements.

Finally, it is undisputed that defendants were in violation of the terms of the governing condominium documents. Under Article VI, § 14 of the bylaws, defendants were required to maintain their unit in a "safe, clean and sanitary condition" and to avoid "damaging any of the Common Elements." It was undisputed that the water pipe burst and caused damage. There was no genuine issue of material fact that a water damaged unit is not safe, clean, and sanitary or that

the water damaged common elements in the unit. Accordingly, the trial court did not err in granting plaintiff relief pursuant to MCL 559.206.

### III. CORRECT DAMAGE AWARD

Next, defendants argue that the trial court erred in awarding plaintiff $13,942.02 in damages for repair costs to the common elements of the unit. We agree.

We review for clear error a trial court's factual findings including the calculation of damages. See *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 512; 667 NW2d 379 (2003). "A finding is clearly erroneous where, after reviewing the entire record, this Court is left with a definite and firm conviction that a mistake has been made." *Id*.

The trial court explained as follows with respect to repair costs:

Plaintiff requests repair and/or testing expenses that have already been performed in the amount of $13,942.02. In support, Plaintiff provided the following invoices: (1) MJ White & Son for electrical and plumbing work in the total amount of $7,270.78 as its Exhibits V and W; (2) Dan Wood Plumbing & Heating Services, Co. for plumbing repairs in the total amount of $2,981.24 as its Exhibit W; and (3) IAQ Management Services, Inc. ("IAQ") for mold testing in the total amount of $3,690.00 as its Exhibit X.

The trial court accepted the amounts plaintiff requested. The trial court concluded that Exhibits V and W to plaintiff's closing argument brief supported an award of $10,252.02 in repair costs to plaintiff for work performed by MJ White and Dan Wood Plumbing. This amounted to clear error.

At the evidentiary hearing, Steven Bronstad, a representative of MJ White, testified about a June 15, 2016 billing invoice that showed MJ White billed and plaintiff paid $5,518.60 for plumbing and electrical work. The billing invoice was admitted at the hearing and it contained the following line items:

| Plumbing Probe | $728.00 |
|---|---|
| Copper Pipe Repair | $1,577.24 |
| Electrical Megger Test | $676.00 |
| O & P Mechanics | $596.25 |
| Partial Demo & Dumpster | $1,941.11 |
| Less Payments Received | ($5,518.60) |
| Total Due | $0.00 |

Attached to the MJ White invoice were invoices from a company called Dan Wood Plumbing for the plumbing probe, the copper pipe repair, and the electrical megger test. There was no testimony at the evidentiary hearing concerning Dan Wood Plumbing. However, it appears that MJ White subcontracted plumbing and electrical work to Dan Wood Plumbing and that MJ White then billed plaintiff for the subcontracting work. By including a line titled "less payments received," MJ White's invoice clearly showed that plaintiff's payment of $5,518.60 covered all of the line items including the subcontracting work performed by Dan Wood Plumbing. Therefore, the trial court clearly erred by adding all of the line items to the $5,518.60; specifically, the trial court erroneously included $2,981.24 in plumbing and electrical expenses that were already incorporated into the $5,518.60 "payment received." The record supported an award of $5,518.60.

Plaintiff attached another MJ White invoice to its closing argument brief as brief Exhibit V. This invoice was dated December 14, 2015, and included the following line items:

| Plumbing Pressure Test | $873.60 |
|---|---|
| Electrical Meg Test | $878.80 |
| Plumbing Repairs | $2,050.42 |
| Total | $3,802.60 |
| Less payments received (thank you) | (-$3,225.00) |
| Total Due | $577.82 |

The invoice did not include any attachments from subcontractors.

The trial court clearly erred in including any amounts from Exhibit V in its calculation of damages. Initially, it is unclear whether there is any overlap between the "less payments received" listed in Exhibit V and the "less payments received" listed in Exhibit W. Moreover, in its closing argument brief, unlike with Exhibit W, plaintiff did not claim that this invoice was admitted at the evidentiary hearing. This violated the instruction that the trial court gave both parties at the evidentiary hearing after the close of proofs. Specifically, the trial court stated: "I ask both of you to make sure that you submit hard copies to the Court and that, if you're going to reference any of your exhibits, that you make sure that you include the exhibit number." By failing to include the hearing exhibit number on the December 14, 2015 invoice, plaintiff failed to comply with the trial court's instruction, and the trial court clearly erred in considering the invoice in calculating damages.

In sum, the trial court clearly erred in finding that Exhibits V and W to plaintiff's closing argument brief supported an award of $10,252.02 in repair costs. The exhibits supported an award of $5,518.60.

The trial court also awarded plaintiff $3,690 for reimbursement for costs associated with mold testing performed by IAQ Management Services, Inc. This did not amount to clear error.

At the evidentiary hearing, John Dattilo testified that his company IAQ billed plaintiff $3,190 for mold testing services and $500 for a cancellation fee for a total amount billed of $3,690. Dattilo identified plaintiff's hearing Exhibit 10 as IAQ's invoices for the services performed for plaintiff. In its written closing argument, plaintiff attached the IAQ invoice as Exhibit X. Dattilo's testimony and the IAQ invoices supported the trial court's factual findings with respect to the $3,690 awarded to plaintiff for mold testing costs.

Having reviewed the record and the supporting invoices, the record supports that plaintiff incurred $3,690 for mold testing and $5,518.60 in plumbing, electrical, and other work performed by MJ White for a total of $9,208.60. In addition, the record supported that this amount should be offset by $2,633.08 for payments that defendants made to plaintiff for plumbing and repair work. Specifically, at the evidentiary hearing, defendant Jamel White testified and introduced records from Chase Bank showing that he made payments to plaintiff and MJ White that totaled $2,633.08. The trial court failed to consider this amount in calculating damages and the trial court should have offset the damages award.

To summarize, the record supported that plaintiff was entitled to reimbursement for $6,575.52 for repairs to the common elements at defendants' unit. Therefore, reversal and remand for entry of an order reflecting this amount is required.

## IV. ATTORNEY FEES AND COSTS

Next, defendants argue that the trial court erred in awarding attorney fees and costs to plaintiff. We disagree.

"We review for an abuse of discretion a trial court's award of attorney fees and costs." *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Id*.

"As a general rule, attorney fees are not recoverable as an element of costs or damages absent an express legal exception." *Fleet Business Credit v Krapohl Ford Lincoln Mercury Co*, 274 Mich App 584, 589; 735 NW2d 644 (2007). Attorney fees are recoverable if expressly provided for by a contract between the parties, *id*., or by an express statutory provision, *Dessart v Burak*, 470 Mich 37, 42; 678 NW2d 615 (2004).

If attorney fees are recoverable, "the burden of proving the reasonableness of the requested fees rests with the party requesting them." *Smith*, 481 Mich at 528-529. To assist the trial court in determining reasonableness of requested attorney fees, the Michigan Supreme Court has provided nonexclusive factors. See *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 282; 884 NW2d 257 (2016).

In this case, the bylaws constituted a contract between the parties, Article VI, § 16 of the bylaws provided that plaintiff was entitled to attorney fees and costs associated with enforcement of the governing documents. Plaintiff submitted attorney Edward Lee's affidavit as an exhibit at the evidentiary hearing wherein Lee averred that he spent 214.30 hours representing plaintiff in this matter and that he billed an hourly rate of $240 per hour. Plaintiff requested a total of $51,432 in attorney fees. Defendants conceded that $240 per hour was a reasonable rate, but contested the amount of hours worked.

The trial court awarded 100 hours of attorney fees at $240 per hour. The trial court considered the register of actions and the complexity of the case and determined that 100 hours was a reasonable amount given the nature of the proceeding. This did not fall outside the range of "reasonable and principled outcomes." *Smith*, 481 Mich at 526. The trial court was aware of the nature of the proceeding. Liability was determined at summary disposition, and there was not a wealth of discovery required to determine liability. Liability was clearly established by the master deed and the bylaws. Therefore, plaintiff's counsel was not required to engage in extensive discovery before the dispositional phase of the proceeding. Similarly, although the parties extended the evidentiary hearing on damages to four days, the issue of damages was not complex. Plaintiff's counsel simply was required to submit evidence including invoices from MJ White and IAQ. Moreover, the trial court determined that plaintiff's counsel filed a frivolous motion to hold defendants in contempt. The trial court indicated that it would sanction plaintiff for the motion. This showed that plaintiff's counsel performed some unnecessary legal work for plaintiff. In sum, the trial court did not abuse its discretion in determining that 100 hours was a reasonable amount of time to spend on this proceeding. Given that defendants conceded that $240 per hour was a reasonable rate, the trial court did not abuse its discretion in determining that plaintiff was entitled to $24,000 in attorney fees.

The trial court also awarded plaintiff costs in the amount of $4,021.43, including $646.43 in court fees and $3,375 in expert fees. This did not amount to an abuse of discretion. Plaintiff submitted Lee's affidavit; the affidavit included an attachment showing that plaintiff incurred $646.43 in costs associated with the proceeding. In addition, the affidavit showed that plaintiff incurred $4,021.43 in expert witness fees for testimony from representatives of IAQ and MJ White. This evidence was admitted at the evidentiary hearing the trial court did not abuse its discretion in relying on the evidence to award $4,021.43 for costs in this case.

In their brief, defendants argue that the trial court erred in failing to impose sanctions against plaintiff for filing a frivolous motion as an offset to plaintiff's attorney fee award. This argument lacks merit. In its opinion and order awarding damages, the trial court addressed what constituted a "reasonable attorney fee" following the evidentiary hearing on damages. The trial court indicated that it considered the register of actions in awarding plaintiff $24,000 in attorney fees as opposed to the requested $51,432 in attorney fees. This indicates that the trial court was aware of its previous ruling that plaintiff's motion for contempt was frivolous and that it considered its previous rulings in awarding reasonable attorney fees to plaintiff.

Moreover, in their motion for reconsideration, defendants argued that the trial court failed to offset the attorney fee award by imposing a sanction against plaintiff for the frivolous motion. In denying the motion for reconsideration, the trial court indicated that it considered defendants arguments in entering its previous opinion and order. The trial court's order denying reconsideration indicates that in determining a reasonable attorney fee award for plaintiff, the trial court considered its previous ruling regarding plaintiff's frivolous motion. Accordingly, we cannot conclude that the trial court abused its discretion in awarding $24,000 in attorney fees and $4,021.43 in costs.

## V. MOTION FOR RECONSIDERATION

Finally, defendants argue that the trial court erred and applied the wrong standard when it denied their motion for reconsideration.

"This Court reviews a trial court's decision [concerning] a motion for reconsideration for an abuse of discretion." *Churchman v Rickerson*, 240 Mich App 223, 233; 611 NW2d 333 (2000). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Smith*, 481 Mich at 526.

MCR 2.119(F) governs a motion for reconsideration and it provides in relevant part as follows:

> (3) Generally, and without restricting the discretion of the court, a motion for rehearing or reconsideration which merely presents the same issues ruled on by the court, either expressly or by reasonable implication, will not be granted. The moving party must demonstrate a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error.

In their motion for reconsideration, defendants argued in part that the trial court erred in calculating damages. The trial court denied defendants' motion for reconsideration, explaining that defendants "merely presented the same issues already ruled on by the Court, either expressly or by reasonable implication . . . ." The trial court abused its discretion in doing so. As discussed earlier, the trial court clearly erred in awarding plaintiff $13,942.02 in repair costs when the record supported an award of $6,575.52. Therefore, the trial court should have granted the motion for reconsideration and reduced the award of repair costs. In all other respects, as discussed earlier, the trial court did not err and reconsideration on the remainder of the damages award was not warranted.

We affirm in part, and reverse in part, the trial court's order and remand to the trial court for entry of an order awarding plaintiff $6,575.52 in repair costs, $24,000 for attorney fees, and $4,021.43 for costs. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Kathleen Jansen
/s/ Michael J. Riordan

-8-