*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

J. G. WENTWORTH, SSC, LP,

      Plaintiff/Counterdefendant/Cross-
      Appellant,

v

ANTHONY MORRIS,

      Defendant/Cross-Defendant,

and

INTEGRITY LIFE INSURANCE COMPANY and
GENERAL AMERICAN LIFE INSURANCE
COMPANY,

      Defendants/Counterplaintiffs/Cross-
      Plaintiffs/Cross-Appellees,

and

EXTENDED HOLDINGS, LTD, and RSL
FUNDING, LLC,

      Defendants/Cross-Defendants.

UNPUBLISHED
April 22, 2021

No.   349226
Wayne Circuit Court
LC No.   15-005847-CZ

Before:  GLEICHER, P.J., and BORRELLO and SWARTZLE, JJ.

PER CURIAM.

     This case returns to the Court after a remand involving the trial court's award of attorney fees. The parties to the primary appeal have stipulated to dismiss the appeal with prejudice, leaving for resolution only J.G. Wentworth, SSC, LP's cross-appeal. For the reasons explained below, we conclude that the trial court did not abuse its discretion with respect to the fees it ordered Wentworth to pay, and we affirm.

-1-

## I. BACKGROUND

The background of this case is summarized in *J G Wentworth SSC, LP v Morris*, unpublished per curiam opinion of the Court of Appeals, issued February 22, 2018 (Docket No. 333413) (*Wentworth I*). Briefly, Anthony Morris entered into a settlement agreement with the City of Detroit to resolve a personal-injury lawsuit that he filed in 1990. As part of the settlement, Morris was entitled to receive a lump sum payment of $60,000 in 2015. The city delegated its payment obligations to General American, and the company purchased an annuity from Integrity for the lump sum, naming Morris as the annuitant.

Morris then created the problem underlying the present lawsuit by double-selling his rights to the $60,000 annuity payment. In 1998, he sold his right to $40,000 of the payment to Wentworth, and then again in 2007, he sold his right to the remaining $20,000 to Wentworth via an affiliate. Later in 2012, Morris sold an additional "right" to $40,000 of the payment to RSL Funding, LLC, and RSL then assigned its interest to Extended Holding, Ltd. The 1998 Wentworth transaction occurred prior to the enactment of the Revised Structured Settlement Protection Act (RSSPA), MCL 691.1301 *et seq*., but the 2007 Wentworth transaction and the 2012 RSL transaction were both subject to the act. As required under the RSSPA, Wentworth (in 2007) and RSL (in 2012) sought and received judicial orders of approval for the respective assignments.

Wentworth subsequently discovered the 2012 RSL transaction, and, as a result, Wentworth sued Morris, RSL, General American, and Integrity in May 2015. Extended was later added as a defendant. After a flurry of proceedings (some of which involved a preliminary injunction over a Texas arbitration matter), the trial court granted interpleader relief to General American and Integrity, and the court held that Wentworth was entitled to the entire $60,000 payment. The trial court also ordered Wentworth, RSL, and Extended to pay costs and reasonable attorney fees to General American and Integrity. At that time, Wentworth's share of the attorney fee awards was approximately $4,158.

RSL and Extended appealed, raising several issues involving the annuity, interpleader relief, and fee award. General American and Integrity cross-appealed with respect to the fee award. Other than making an appearance, Wentworth did not participate in the appeal. In *Wentworth I*, this Court affirmed with respect to the claims raised by RSL and Extended, and it agreed with General American and Integrity that the trial court had the authority to order the payment of attorney fees under both the RSSPA and MCR 3.603(E). The Court concluded, however, that the trial court erred with respect to the reasonableness of the fee awards. As the Court explained,

> Integrity and General American argue in their cross-appeal that the trial court misapplied the controlling legal test for determining the reasonableness of awarded fees, as set forth by our Supreme Court in *Smith v Khouri*, 481 Mich 519; 751 NW2d 472 (2008), and recently clarified in *Pirgu v United Servs Auto Ass'n*, 499 Mich 269; 884 NW2d 257 (2016). Specifically, they contend that the trial court failed to consider all of the relevant *Smith* factors and approve the rates charged and the number of hours billed by Integrity and General American's attorneys. We agree that remand is required for the trial court to consider the relevant *Smith* factors.

-2-

In determining the reasonableness of requested attorney fees, "a trial court should begin its analysis by determining the fee customarily charged in the locality for similar legal services." *Smith*, 481 Mich at 530. To do so, courts generally rely "on data contained in surveys such as the Economics of the Law Practice Surveys that are published by the State Bar of Michigan." *Id.* at 531. "The trial court must then multiply that rate by the reasonable number of hours expended in the case to arrive at a baseline figure." *Pirgu*, 499 Mich at 281. Finally, the court must consider "all" of the following nonexclusive factors (along with any other relevant factors) "to determine whether an up or down adjustment is appropriate":

> (1) the experience, reputation, and ability of the lawyer or lawyers performing the services,
>
> (2) the difficulty of the case, i.e., the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly,
>
> (3) the amount in question and the results obtained,
>
> (4) the expenses incurred,
>
> (5) the nature and length of the professional relationship with the client,
>
> (6) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer,
>
> (7) the time limitations imposed by the client or by the circumstances, and
>
> (8) whether the fee is fixed or contingent. [*Id.* at 281-282.]

"In order to facilitate appellate review, the trial court should briefly discuss its view of each of the factors above on the record and justify the relevance and use of any additional factors." *Id.* at 282.

In this case, when the trial court awarded Integrity and General American attorney fees related to the preliminary injunction proceedings, it immediately leapt to a consideration of the reasonableness factors, rather than beginning its inquiry "by determining the fee customarily charged in the locality for similar legal services," see *Smith*, 481 Mich at 530, and it then attempted to use the reasonableness factors to determine reasonable rates for Integrity's and General American's attorneys in light of their respective experience, reputation, and abilities. In other words, the trial court conflated the first step of the test with the last one. Its error in that respect permeated the remainder of its analysis. Instead of calculating the "baseline figure" by multiplying the fee customarily charged in the locality for similar legal services by the reasonable number of hours expended,

see *Pirgu*, 499 Mich at 281, the trial court multiplied the rate it had established for each attorney by the number of hours it found reasonable. The trial court also failed to briefly discuss all of the reasonableness factors on the record, and its related order is silent with regard to those factors. Therefore, it is unclear which of the eight reasonableness factors the trial court considered, or whether it considered "all" of them. See *id*. at 281.

This error extended to the trial court's later order regarding interpleader costs and fees. The trial court relied on its previous determination of reasonable hourly rates for the respective attorneys. This led the trial court to again improperly calculate the "baseline figure." Further, after entertaining argument from the parties on whether the reasonableness factors militated in favor of deviating up or down from that erroneous baseline figure, the trial court failed to briefly discuss each of the factors on the record. Instead, the trial court simply stated, "I don't find . . . any basis for a deviation balancing all of the statements made by counsel. I think that the number that the Court has before it now with the reduced hours is reasonable and that's what will be ordered." Nor did the trial court discuss the reasonableness factors in its related order. Therefore, we cannot discern whether the court actually considered the required reasonableness factors.

On the record before this Court, we cannot determine whether the court abused its discretion by ruling as it did. See *id*. at 283 n 50. Therefore, we vacate the trial court's fee awards and remand for further consideration of the reasonableness of those awards in light of this opinion. See *id*. at 283. We uphold the trial court's awards of reasonable costs. [ *Wentworth I*, unpub op at 10-11.]

On remand, this matter was assigned to a new trial judge because the previously assigned judge had retired. General American and Integrity moved for fees and costs in the amount of $122,759.14 against RSL, Extended, and Wentworth for the prior trial court proceedings; fees and costs in the amount of $118,033.24 against RSL, Extended, and Wentworth for the appellate proceedings; and fees and costs in the amount of $15,419.20, plus additional amounts as may be incurred through final judgment, against RSL, Extended, and Wentworth for the remand proceedings. In support of that request, General American and Integrity cited *Wentworth I*, the RSSPA, MCR 3.603, and the 2007 and 2012 transfer orders. They argued that the requested fee awards were reasonable under the *Smith/Pirgu* test discussed in *Wentworth I*.

Following an evidentiary hearing, the trial court awarded General American and Integrity a total of $240,153 in fees related, collectively, to the original trial proceedings, the *Wentworth I* appeal, and the trial proceedings on remand. The trial court noted that the authority for the request for attorney fees was the RSSPA; it did not rely on MCR 3.603. In applying the *Smith/Pirgu* test according to this Court's remand instructions, the trial court concluded that the reasonable rate charged in the locality for similar services was $285 an hour. The trial court next considered the hours billed by each of six attorneys who performed work on this case for General American and Integrity, holding that the amount of time actually billed was reasonable, but further holding that the time spent on the cross-appeal of General American and Integrity in *Wentworth I* was to be deducted from the final award.

-4-

Based on its findings concerning the reasonable hourly rate and reasonable time expended, the trial court arrived at separate "baseline" figures for each of the six attorneys, separated into time spent on the various stages of the case. After considering the reasonableness factors discussed in *Wentworth I* as applied to each of the six attorneys, the trial court held that an adjustment of the baseline figure was appropriate only as to attorney Michelle Thurber Czapski, who served as lead counsel for General American and Integrity, finding that her reasonable hourly rate in this matter was $375 an hour. With respect to Wentworth's argument that it should not be held responsible for any fees, including those fees associated with the appeal, the trial court explained:

> With respect to [Wentworth's] argument that it should not be required to pay attorney fees, the Court notes that [Wentworth] did not appeal the award of attorney fees and costs against it. Therefore, the Court agrees that it would not be reasonable to require [Wentworth] to pay any amount of attorney fees related to the appeal. On remand this Court has reviewed the invoices of General and Integrity. The Court's earlier determination that [Wentworth] is responsible for 30% of attorney fees, and RSL and Extended are responsible for 70% appears to be based on an assessment of the overall percentage of time General and Integrity expended as a result of actions taken by [Wentworth] and RSL/Extended. While it is difficult to be completely precise, the Court's initial determination of the 30%-70% division is reasonable, looking at the work performed by Integrity and General as a whole. The Court finds that the 30%-70% division should also apply to proceedings following remand.

The trial court allocated 30% of the fees awarded with regard to the "trial litigation and remand" to Wentworth, 70% of those same fees to RSL and Extended, and all of the fees associated with the main appeal in *Wentworth I* to RSL and Extended. Thus, Wentworth was ordered to pay General American and Integrity fees totaling $40,837.05, and RSL and Extended were ordered to pay fees totaling $199,315.95.

Wentworth moved for reconsideration, arguing that the trial court had palpably erred by ordering it to pay any "portion of the fees related to the Preliminary Injunction necessitated due to RSL initiating a frivolous arbitration case in Texas." Wentworth observed that the original trial judge had differentiated the fees in that respect, holding RSL and Extended liable for them exclusively. After considering the matter without a hearing, the trial court issued an opinion and order partially granting Wentworth's motion for reconsideration. The trial court reasoned that, although it agreed with Wentworth "that costs and fees attributable to the preliminary injunction should be allocated to RSL and Extended" only, it disagreed with Wentworth's argument concerning the precise dollar amount that should be awarded against it as a result. On the basis of its own calculations, the trial court adjusted its original fee award, allocating $31,916.70 to Wentworth (plus costs of about $223), with $208,235.95 allocated to RSL and Extended (plus costs of about $2,299). With respect to Wentworth, the trial court explained that it arrived at the $31,916.70 figure as follows:

> 1) General American/Integrity total fees during the pre-*Wentworth I* trial proceedings minus their fees associated with matters involving the Texas proceedings = $90,237.00.

$$90,237.00 * .3 = \$27,071.10$$

2) General American/Integrity total fees on remand = \$16,152.00

$$16,152.00 * .3 = \$4,845.60$$

3) $27,071.10 + 4,845.60 = \$31,916.70$

RSL and Extended subsequently appealed, and Wentworth cross-appealed. As noted at the outset, the claims on appeal involving RSL and Extended have been resolved by stipulation, leaving only Wentworth's cross-appeal remaining for resolution.

## II. ANALYSIS

### A. STANDARDS OF REVIEW

As our Supreme Court explained in *Pirgu*, "We review a trial court's award of attorney fees and costs for an abuse of discretion. An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Pirgu*, 499 Mich at 274. Similarly, "[a] trial court's ruling on a motion for reconsideration is reviewed for an abuse of discretion." *Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 699; 880 NW2d 269 (2015). A trial court's related factual findings are reviewed for clear error. *Sulaica v Rometty*, 308 Mich App 568, 586; 866 NW2d 838 (2014). Finally, questions of statutory interpretation are reviewed de novo, see *In re Medina*, 317 Mich App 219, 228; 894 NW2d 653 (2016), as are questions concerning the proper "application of legal doctrines, such as res judicata," *Estes v Titus*, 481 Mich 573, 579; 751 NW2d 493 (2008).

### B. AUTHORITY TO IMPOSE FEE AWARD AGAINST WENTWORTH

Wentworth begins by asserting that the trial court did not have authority to assess fees against the company under the RSSPA. As explained, we are not persuaded by Wentworth's arguments.

As a threshold matter, relying on *Vanderwall v Midkiff*, 186 Mich App 191; 463 NW2d 219 (1990), General American and Integrity argue that, because Wentworth did not participate in *Wentworth I*, its claim in the current cross-appeal that it does not owe fees under the RSSPA is barred under res judicata. The doctrine is a prudential one, however, and it should not be applied when doing so would be unjust. *Young v Edwards*, 389 Mich 333, 340-341; 207 NW2d 126 (1973). We observe that, at the conclusion of the first trial-court proceedings, the trial court had ordered Wentworth to pay a fairly modest amount in fees to General American and Integrity. Wentworth appears to have made the sensible litigation decision not to challenge that award on appeal. In this situation, we are hesitant to penalize a party that made a sensible decision that, in retrospect, turned out badly for that party. Because applying res judicata to Wentworth's cross

appeal would be unjust under the unique circumstances of this appeal, we decline to apply the doctrine.[1]

We now turn to the merits. Because Wentworth's first transaction with Morris—the purchase of the rights to a $40,000 portion of the structured settlement—occurred in 1998, before the RSSPA was enacted, Wentworth contends that the trial court erred by awarding fees against it under the RSSPA. In relevant part, the RSSPA provides with respect to attorney fees:

> The transferee *is liable* to the structured settlement obligor and the annuity issuer for both of the following:
>
> * * *
>
> (*ii*) Other liabilities or costs, including reasonable costs and attorney fees, arising from the structured settlement obligor's and the annuity issuer's compliance with the order of the court or from the transferee's failure to comply with this act. [MCL 691.1305(b).]

By using the disjunctive term "or," MCL 691.1305(b)(*ii*) provides two clear alternatives with regard to an award attorney fees, indicating that the transferee is liable to the settlement obligor and the annuity issuer for fees "arising from the structured settlement obligor's and the annuity issuer's compliance with the order of the court *or* from the transferee's failure to comply with this act." (Emphasis added.) The record does not show that Wentworth failed to comply with the act, so we consider whether Wentworth is liable under the "compliance with the order of the court" prong of the fee-shifting provision.

We first note that Wentworth sued General American and Integrity, not just Morris, RSL, and (later) Extended. It was Wentworth that brought General American and Integrity into this lawsuit as defendants. Second, while Wentworth is certainly correct that its initial purchase of the rights to $40,000 occurred before the RSSPA was enacted, it is undisputed that its subsequent purchase of the right to the remaining $20,000 occurred after the RSSPA was enacted. In fact, the subsequent purchase was approved by an order of the court in 2007. Third, the prior panel in *Wentworth I* did not hold that RSL and Extended were the sole "transferees" for purposes of the fee-shifting provision of the RSSPA. Thus, the record clearly shows that Wentworth is a "transferee" under the RSSPA, at least with respect to the 2007 transaction. See MCL 691.1302(u).

Wentworth attempts to minimize its status as a transferee by framing the dispute between it and RSL/Extended as one focused solely over the right to "the" $40,000 interest that Wentworth purchased in 1998. But Morris' $60,000 annuity payment was not originally structured to be paid out in separate, identifiable tranches; rather, it was to be paid out in a lump sum of fungible dollars.

---

[1] General American and Integrity make similar arguments with respect to law-of-the-case and the mandate rule. Because Wentworth did not participate in *Wentworth I* and the applicability of the RSSPA's fee-shifting provision to Wentworth was not litigated in that first appeal, neither doctrine applies here to bar us from reaching the merits of Wentworth's claims on appeal.

There simply was no "the" $40,000 payment that the parties were litigating over. Rather, Wentworth sued RSL, claiming that its own interests in the entire $60,000 had priority of those of RSL (and later Extended). In other words, Wentworth and RSL/Extended had competing demands totaling $100,000 over an undifferentiated $60,000 payment. In point of fact, had the 2007 Wentworth transaction been found to be fatally defective by the trial court, it is entirely possible that RSL/Extended would have been entitled to at least $20,000 of the $60,000 sum as partial satisfaction for the 2012 RSL transaction. Although it does not appear that Wentworth was at risk of being completely divested of all of its interest in the annuity payment (i.e., the 2012 RSL transaction was for only $40,000), Wentworth was at risk of being at least partially divested of its interests. Thus, for purposes of the RSSPA, Wentworth was a "transferee" with respect to this matter.

Under the RSSPA's fee-shifting provision, the trial court did not have discretion to exempt Wentworth completely from payment of attorney fees here. The act states, in relevant part, that "[t]he transferee" (here, Wentworth) "*is liable* to the structured settlement obligor" (General American) "and the annuity issuer" (Integrity) for the "reasonable . . . attorney fees, arising from the structured settlement obligor's and the annuity issuer's compliance with the order of the court." MCL 691.1305(b)(*ii*) (emphasis added). In this context, it is clear that "is liable" means *is*—not may be—liable. Thus, the trial court did not abuse its discretion in concluding that Wentworth was liable for reasonable attorney fees under the RSSPA.

The question remains, however, whether the trial court abused its discretion with respect to the allocation of the fee award as to Wentworth, and we turn to that question next.

## C. ALLOCATION OF THE FEE AWARD

Wentworth does not challenge the reasonableness of the fee rates or time billed, as determined by the trial court on remand. Instead, Wentworth argues that the trial court abused its discretion by allocating 30% of the fee award to Wentworth instead of allocating the entire fee award to RSL and Extended. In particular, Wentworth argues that, as General American and Integrity recognized in their motion for fees on remand, the protracted nature of this litigation was only necessitated by "the inexplicable, indefensible, wrecking-ball litigation strategy" of RSL and Extended. Assuming arguendo that this is an accurate characterization, it appears that the trial court did, in fact, take this dynamic into consideration on remand.

The trial court did not allocate to Wentworth 30% of the entire fee award. Rather, the trial court exempted Wentworth from paying any fees associated with the appeal in *Wentworth I*. The trial court then further deducted from that amount any fees incurred by General American or Integrity as a result of the matters involving the Texas proceedings, which the trial court determined were attributable solely to RSL and Extended. In the end, the trial court allocated to Wentworth $31,916.70 of the total $240,152.65, which is about 13% of the gross total.

Reasonable jurists could have arrived at different allocations. As this Court tacitly recognized in *Wentworth I*, but-for RSL's failure to abide by the RSSPA, the present dispute never would have arisen in the first instance. See *Wentworth I*, unpub op at 8 ("As already noted, RSL failed to comply with MCL 691.1303. Had it done so, it would have been aware of the actual due date for the $60,000 payment, and it also would have been aware that those funds were no longer

-8-

owed to Morris."). On this basis, a different jurist might have reduced the amount allocated to Wentworth even further.

And yet, our review is not de novo, but for an abuse of discretion. "An abuse of discretion is not simply a matter of a difference in judicial opinion, rather it occurs only when the trial court's decision is outside the range of reasonable and principled outcomes." *Augustine v Allstate Ins Co*, 292 Mich App 408, 419; 807 NW2d 77 (2011). The trial court considered the same issues that Wentworth now raises on appeal and it reviewed the same record available to us, and the trial court determined that Wentworth should be allocated liability for 30% of the fees in the proceedings that Wentworth was actively involved in, i.e., excluding matters involving the Texas proceedings and the first appeal. The trial court concluded that, as a factual matter, 30% was a reasonable estimate of the time and resources that General American and Integrity spent specifically on responding to Wentworth's actions throughout the lawsuit. The estimate was a finding of fact, and we discern no clear error with respect to the estimate, either by the original trial judge who made the determination or the subsequent trial judge on remand who retained it. Based on our review, we conclude that the trial court made a reasoned and principled decision, based on the facts and the law, regarding how much attorney fees Wentworth should pay, and we cannot conclude that it abused its discretion in doing so.

### III. CONCLUSION

With regard to the cross-appeal, we affirm the trial court's award of attorney fees against Wentworth. Cross-appellees, having prevailed in full, may tax costs under MCR 7.219(F).

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Stephen L. Borrello
/s/ Brock A. Swartzle