*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

---

*In re* ESTATE OF JOANNA L. HUBBARD.

---

SARAH W. COLEGROVE, Special Fiduciary for
the ESTATE OF JOANNA L. HUBBARD,

        Appellee,

v

SUSAN L. HUBBARD,

        Appellant,

and

JOHN D. HUBBARD AND JULIE HUBBARD,

        Appellees.

UNPUBLISHED
November 9, 2023

No.   359608
Wayne Probate Court
LC No.   2018-835415-DE

---

*In re* ESTATE OF JOANNA L. HUBBARD.

---

SARAH W. COLEGROVE, Special Fiduciary for
the ESTATE OF JOANNA M. HUBBARD,

        Appellee,

v

SUSAN L. HUBBARD,

        Appellant,

and

No.   362757
Wayne Probate Court
LC No.   2018-835415-DE

-1-

JOHN D. HUBBARD and JULIE HUBBARD,

     Appellees.

_____

Before:  Cavanagh, P.J., and Riordan and Patel, JJ.

Per Curiam.

     In Docket No. 359608, appellant Susan L. Hubbard ("Susan"), a beneficiary of the estate of Joanna Hubbard ("the estate"), appeals as of right the probate court's order allowing the first annual account of special fiduciary Sarah Colegrove, approving the special fiduciary's requested attorney fees, and granting a request for surcharge against Susan.[1]  The court ultimately held that Susan was responsible for the special fiduciary's attorney fees because of "her responsibility for the protracted litigation in this probate matter."  In Docket No. 362757, Susan appeals by leave granted the August 8, 2022 order of Wayne Probate Court Chief Judge Freddie G. Burton, Jr., denying her motion, on de novo review, to disqualify the presiding probate court judge, Judge Terrance Keith.  In Docket No. 359608, vacate the probate court's orders approving the special fiduciary's attorney fees and holding Susan responsible for those fees as a sanction for her litigious conduct, and remand to that court for further proceedings.  In Docket No. 362757, we affirm the chief judge's order denying Susan's motion to disqualify Judge Keith.

## I.  BACKGROUND

     These appeals involve a dispute over the attorney fees of Sarah W. Colegrove, as special fiduciary of the estate of Joanna L. Hubbard (the "estate"), and Susan's subsequent initiation of disqualification proceedings regarding Judge Keith.

     Susan is the daughter of the decedent, Joanna Hubbard.  Susan's brother, John Hubbard, originally served as personal representative of Joanna's estate, but was removed "due to the acrimony between the interested parties."  The probate court thereafter appointed Colegrove as special fiduciary, to "[t]ake possession and control of all Estate assets," and authorized her, in relevant part, "to terminate and or hire independent legal counsel" in a pending circuit court civil action between the estate and Oakwood Healthcare, and granted her "full power and authority to make any and all decisions, including settlement, which are in the best interests of the Estate including without limitation, the handling of any and all litigation that includes the pending claim of Andrew Moxie[2] for attorney fees and costs pending in the Civil Lawsuit until completion."

     In August 2021, Colegrove filed a petition for allowance of her first annual account as special fiduciary, including approval of attorney fees.  Susan filed objections to the account and challenged the reasonableness of the requested attorney fees.  John Hubbard, who is Susan's brother, along with his wife, Julie (collectively referred to as "the Hubbards"), left it to the probate

---

[1] Appellant Susan Hubbard is a Wayne Circuit Court Judge.

[2] Moxie is Susan's husband.

court's discretion to determine the amount of Colgrove's fees. However, the Hubbards also detailed their substantial actions undertaken to defend against claims of both Susan and her husband Moxie in the circuit court proceeding, which included Moxie's claim for attorney fees and attempts to disqualify the circuit court judge, and Susan's attempts to intervene in the circuit court proceedings. The Hubbards claimed that they had spent more than $25,000 defending the estate against these actions. The Hubbards asked that Susan be required to "bear the cost of the Special Fiduciary's fees."

At a hearing on October 13, 2021, the probate court approved Colegrove's first account and approved her fees in the amount of $51,159.55. The court denied Susan's request for an evidentiary hearing to determine the reasonableness of the special fiduciary's fees. The court also approved a request for a surcharge against Susan. In a supplemental opinion and order issued in December 2021, the court ruled that it was assessing the special fiduciary's fees against Susan, "given her responsibility for the protracted litigation in this probate estate matter." Susan appeals these orders in Docket No. 359608.

After Susan filed her claim of appeal in Docket No. 359608, she filed a motion to disqualify Judge Keith as the presiding probate court judge. The motion alleged that Susan encountered Judge Keith in an elevator on May 9, 2022, and after she rebuffed his attempts to engage her in conversation, he responded by stating "I think you're despicable and I don't know why you're still here." Susan also alleged that she and Judge Keith had a past "contentious history." Judge Keith disputed Susan's version of the events on the elevator, denied making the alleged comment, and denied that he was biased against Susan. Accordingly, he denied her motion for disqualification. Susan thereafter requested a de novo hearing before the chief judge. Following a hearing, the chief judge also denied Susan's motion to disqualify Judge Keith. This Court granted Susan's application for leave to appeal that order in Docket No. 362757.[3]

## II. AWARD OF ATTORNEY FEES AND SANCTIONING OF SUSAN

Susan argues that the probate court erred by approving the special fiduciary's attorney fees without conducting an evidentiary hearing and by failing to consider appropriate factors in determining an appropriate attorney-fee award. She further argues that the court erred by ordering her to pay the special fiduciary's legal fees without specifying a statute, court rule, or other authority supporting its decision. Because we agree with both of these arguments, we vacate the probate court's orders approving the special fiduciary's attorney fees and holding Susan liable for those fees as a sanction for her litigious conduct, and remand to that court for further proceedings.

## A. STANDARD OF REVIEW

This Court generally reviews a trial court's award of attorney fees and costs for an abuse of discretion. *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 274; 884 NW2d 257 (2016). A trial court's decision regarding sanctions also is reviewed for an abuse of discretion. *Kaftan v Kaftan*, 300 Mich App 661, 668; 834 NW2d 657 (2013). A court abuses its discretion when its

---

[3] *In re Hubbard Estate*, unpublished order of the Court of Appeals, entered October 13, 2022 (Docket No. 362757).

decision is outside the range of reasonable and principled outcomes. *Pirgu*, 499 Mich at 274. However, whether a court was authorized to award sanctions or attorney fees in the first instance is a question of law, which is subject to de novo review. *In re Capuzzi Estate*, 470 Mich 399, 402; 684 NW2d 677 (2004).

## B. SANCTIONS

Susan argues that the probate court erred by holding her responsible for the special fiduciary's fees without citing appropriate legal authority to support that decision. As Susan correctly observes, Michigan adheres to the American rule, which provides that attorney fees are not ordinarily recoverable unless allowed by a statute, court rule, common-law exception, or contractual provision. See *Dessert v Burak*, 470 Mich 37, 42; 678 NW2d 615 (2004); *Skaates v Kayser*, 333 Mich App 61, 84; 959 NW2d 33 (2020).

The probate court did not specify the authority on which it was relying to hold Susan responsible for the special fiduciary's attorney fees in either its decision from the bench on October 13, 2021, or its October 22, 2021 order granting the request to surcharge Susan. The court subsequently issued a supplemental opinion and order on December 23, 2021, clarifying its prior ruling. In that opinion, the court cited *In re Hammond Estate*, 215 Mich App 379, 387; 547 NW2d 36 (1996), as the exclusive authority for assessing the special fiduciary's attorney fees against Susan as a sanction for her litigious conduct.

In *In re Hammond Estate*, the appellants, who were estate beneficiaries, unsuccessfully sought removal of the personal representative and requested a determination that the personal representative was liable to the estate for alleged wrongdoing. *Id.* at 381-384. After the probate court dismissed the appellants' petition, finding no evidence of wrongdoing, the personal representative filed a motion for an award of attorney fees incurred in defense of the appellants' litigation. *Id.* at 384. The trial court awarded $148,758.78 in attorney fees, to be paid jointly by the appellants. *Id.* This Court found no evidence of wrongdoing by the personal representative and upheld the trial court's award of attorney fees against the appellants. *Id.* at 387. This Court held that the probate court did not err by awarding the personal representative attorney fees because "[a]ttorney fees incurred by an executor to defend against a petition for his removal are properly chargeable against the estate where no wrongdoing is proven," and appellants failed to prove any wrongdoing by the personal representative. *Id.*; see also *In re Temple Marital Trust*, 278 Mich App 122, 135; 748 NW2d 265 (2008). This Court also stated that it was appropriate to assess the attorney fees against the petitioning beneficiaries rather than the entire trust, reasoning that "it would be grossly unjust and inequitable to assess a portion of the attorney fees against those beneficiaries who declined to participate in appellants' efforts to 'reprobate' Hammond's estate." *In re Hammond Estate*, 215 Mich App at 387-388.

In the present case, the special fiduciary's fees were not primarily incurred in defending petitions brought by Susan against the special fiduciary, but rather were incurred because of what the probate court characterized as Susan's "extreme litigiousness" in other estate matters, particularly in supporting her husband in his efforts to recover attorney fees from the estate in the related circuit court action, all of which necessitated the special fiduciary's involvement as a representative of the estate. More significantly, we do not read *In re Hammond Estate* as establishing an independent basis for imposing sanctions against a beneficiary, but rather as

authority for assessing attorney fees against a petitioning beneficiary as a sanction after a proper finding that attorney fees are otherwise justified under a court rule or other established authority. That is, attorney fees cannot be assessed under *In re Hammond Estate* without first finding that attorney fees are independently authorized by statute, court rule, or the common law. Because the probate court did not identify any independent authority for assessing a sanction of attorney fees against Susan, we vacate the portion of the probate court's order holding Susan responsible for the special fiduciary's attorney fees and remand this case to the probate court for further proceedings. On remand, the probate court must first specify an independent basis for finding that attorney fees are authorized by statute, court rule, or the common law before it can apportion those fees against Susan under *In re Hammond Estate*.[4]

## C. THE ATTORNEY-FEE AWARD

Susan also challenges the probate court's approval of the special fiduciary's attorney fees. Although none of the parties dispute that Colegrove was entitled to recover reasonable attorney fees in her role as special fiduciary, Susan argues that the probate court erred by approving Colegrove's fees without conducting an evidentiary hearing where there were factual disputes regarding to the reasonableness of the hours billed, and by failing to consider the reasonableness of the special fiduciary's requested fees under the appropriate framework.[5] We agree.

In *Smith v Khouri*, 481 Mich 519, 530-531; 751 NW2d 472 (2008), our Supreme Court recognized that trial courts historically have weighed the factors set forth in *Wood v DAIIE*, 413 Mich 573; 321 NW2d 653 (1982), and MRPC 1.5(a) in determining a reasonable attorney fee, but

---

[4] In her brief on appeal, the special fiduciary cites MCL 700.1309 and MCR 5.204 as authority for the imposition of sanctions against Susan. The probate court did not cite this statute or court rule as authority for its decision to sanction Susan by holding her responsible for the special fiduciary's fees. In any event, these authorities do support the probate court's assessment of attorney fees against Susan. MCL 700.1309 merely authorizes a court to "[a]ppoint a special fiduciary to perform specified duties" and to "[e]njoin a person subject to the court's jurisdiction from conduct that presents an immediate risk of waste, unnecessary dissipation of an estate's or trust's property, or jeopardy to an interested person's interest." MCR 5.204 similarly authorizes a court to appoint a special fiduciary, citing MCL 700.1309, and specifies the special fiduciary's powers and duties. Neither provision addresses the issue of attorney fees or a court's authority to assess attorney fees against another person.

[5] We disagree with the special fiduciary that Susan waived any entitlement to an evidentiary hearing by acknowledging that an evidentiary hearing was not necessary. Viewed in context, the statement in question, made by Susan's counsel, merely addressed the necessity of an evidentiary hearing to examine Susan's litigious history, which was the basis for the Hubbards' request for a surcharge or sanctions against Susan. Susan's counsel agreed that an evidentiary hearing was not necessary "on that." Counsel's statement cannot be characterized as "the intentional relinquishment or abandonment" of Susan's right to an evidentiary hearing on the issue of the reasonableness of the special fiduciary's requested attorney fees. *Patel v Patel*, 324 Mich App 631, 634; 922 NW2d 647 (2018).

concluded that this multi-factor approach needed some fine tuning. The Court provided the following instructions for determining a reasonable attorney fee:

> We hold that a trial court should begin its analysis by determining the fee customarily charged in the locality for similar legal services, i.e., factor 3 under MRPC 1.5(a). In determining this number, the court should use reliable surveys or other credible evidence of the legal market. This number should be multiplied by the reasonable number of hours expended in the case (factor 1 under MRPC 1.5[a] and factor 2 under *Wood*). The number produced by this calculation should serve as the starting point for calculating a reasonable attorney fee. We believe that having the trial court consider these two factors first will lead to greater consistency in awards. Thereafter, the court should consider the remaining *Wood*/MRPC factors to determine whether an up or down adjustment is appropriate. And, in order to aid appellate review, a trial court should briefly discuss its view of the remaining factors. [*Smith*, 481 Mich at 530-531.]

Subsequently, in *Pirgu*, 499 Mich at 281, the Supreme Court reiterated that in determining a reasonable attorney fee, a court must first decide "the reasonable hourly rate customarily charged in the locality for similar services" and then multiply that rate by the reasonable number of hours expended in the case to arrive at a baseline figure. A court must then consider all of the remaining *Wood* and MRPC 1.5(a) factors to decide whether it is appropriate to adjust the baseline figure up or down. *Id*. However, the Court recognized that its decision in *Smith* requires trial courts to consult two different lists of factors that contain "significant overlap," which "unnecessarily complicates the analysis and increases the risk that courts may engage in incomplete or duplicative consideration of the enumerated factors." *Id*. Accordingly, the Court distilled the remaining *Wood* and MRPC 1.5(a) factors into the following list to assist trial courts in their analysis:

> (1) the experience, reputation, and ability of the lawyer or lawyers performing the services,
>
> (2) the difficulty of the case, i.e., the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly,
>
> (3) the amount in question and the results obtained,
>
> (4) the expenses incurred,
>
> (5) the nature and length of the professional relationship with the client,
>
> (6) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer,
>
> (7) the time limitations imposed by the client or by the circumstances, and
>
> (8) whether the fee is fixed or contingent. [*Id*. at 282.]

The Court in *Pirgu* further stated that these factors are not exclusive, and a trial court may consider any additional factors that are relevant. *Id*. The Court also again clarified that, to

"facilitate appellate review, the trial court should briefly discuss its view of each of the [*Wood*/MRPC 1.5(a)] factors . . . on the record and justify the relevance and use of any additional factors." *Id*.

At issue here is whether the probate court erred by granting the special fiduciary attorney fees without first holding an evidentiary hearing to determine the reasonableness of the requested fees. In *Smith*, 481 Mich at 532, the Supreme Court stated:

> The fee applicant bears the burden of supporting its claimed hours with evidentiary support. If a factual dispute exists over the reasonableness of the hours billed or hourly rate claimed by the fee applicant, the party opposing the fee request is entitled to an evidentiary hearing to challenge the applicant's evidence and to present any countervailing evidence.

Susan filed a written response objecting to the special fiduciary's requested attorney fees. In particular, Susan claimed that the special fiduciary's fees were excessive and unreasonable, and questioned the legitimacy of her work product. For example, Susan challenged $16,606 in fees incurred from August 2020 until December 2020, alleging that they should be stricken because they did not benefit the estate. Susan made this same claim with respect to $17,080 in fees that the special fiduciary incurred from January to August of 2021. Susan also raised several factual disputes regarding the reasonableness of the hours billed by both the special fiduciary and her co-counsel and complained that the special fiduciary's fees unreasonably risked depletion of the estate. Susan specifically requested an evidentiary hearing to address her objections, including the reasonableness of the hours billed.

The probate court explained that it was denying Susan's request for an evidentiary hearing because it was familiar with the case and its nuances. It also relied in part on a report prepared by the guardian-ad-litem (GAL)[6] as justification for its decision not to hold an evidentiary hearing. The GAL stated in his report that the special fiduciary's hourly rates for 2020 and 2021 were both "less than attorney fees charged for similar services in the County." After reviewing the requested fees, the GAL stated that they appeared "reasonable" and recommended that they be approved.

We agree that the probate court abused its discretion by awarding attorney fees without conducting an evidentiary hearing and without conducting the analysis required by *Smith* and *Pirgu*. First, Susan raised multiple factual disputes regarding the reasonableness of the hours billed by the special fiduciary and her co-counsel. Accordingly, regardless of the probate court's familiarity with the case and its nuances, or the GAL's belief that the requested fees were reasonable, Susan was entitled to an evidentiary hearing to address and resolve those disputes, and an opportunity to present any countervailing evidence. *Smith*, 481 Mich at 532. Furthermore, even after professing its familiarity with the case, the court failed to analyze the requested fees under the framework required by *Smith* and *Pirgu*. Indeed, it did not cite either of those decisions or discuss any of the relevant factors. It did not initially discuss whether the special fiduciary and

---

[6] The probate court appointed a GAL for "Joanna L. Hubbard, Decedent and all other interested persons as provided by statute or court rule."

her co-counsel charged a reasonable hourly rate customarily charged in the locality for similar services or determine a reasonable number of hours expended in the case to arrive at a baseline figure. *Pirgu*, 499 Mich at 281. Likewise, it did not discuss any of the remaining *Wood* and MRPC 1.5(a) factors to explain its determination of a reasonable attorney fee.

Accordingly, we vacate the portion of the probate court's order approving the special fiduciary's attorney fees and remand to that court for further proceedings of this issue. On remand, the probate court should conduct an evidentiary hearing to address Susan's factual disputes with the requested fees, and then evaluate the special fiduciary's fee request in accordance with *Smith* and *Pirgu*.

## III. DISQUALIFICATION OF JUDGE KEITH

In Docket No. 362757, Susan argues that Chief Judge Burton erred by denying her motion to disqualify Judge Keith from presiding over this probate matter. We disagree.

This Court "review[s] a trial court's factual findings regarding a motion for disqualification for an abuse of discretion and its application of the facts to the law de novo." *Kern v Kern-Koskela*, 320 Mich App 212, 231; 905 NW2d 453 (2017) (quotation marks and citation omitted). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Id.* (quotation marks and citation omitted). To the extent that this issue requires this Court to interpret and apply MCR 2.003, "[t]he interpretation and application of court rules present questions of law to be reviewed de novo using the principles of statutory interpretation." *Lamkin v Engram*, 295 Mich App 701, 707; 815 NW2d 793 (2012).

On May 17, 2022, Susan filed a petition requesting that Judge Keith be disqualified from presiding over this case under MCR 2.003(C)(1)(a) and (b),[7] which provide:

> (1) Disqualification of a judge is warranted for reasons that include, but are not limited to, the following:
>
> (a) The judge is biased or prejudiced for or against a party or attorney.
>
> (b) The judge, based on objective and reasonable perceptions, has either (*i*) a serious risk of actual bias impacting the due process rights of a party as enunciated in *Caperton v Massey*, [556 US 868]; 129 S Ct 2252; 173 L Ed 2d 1208 (2009), or (*ii*) has failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct.

Susan's petition recounted her encounter with Judge Keith on a judicial elevator on May 9, 2022, when, after he attempted to engage her in conversation and she twice told him not to speak to her, he allegedly responded by stating, "Ok, I won't! Frankly, I think you're despicable and I

---

[7] The petition also cited MCR 2.003(C)(1)(c) ("judge has personal knowledge of disputed evidentiary facts concerning the proceeding"), but it did not explain how this provision was applicable to this case.

don't know why you're still here!"  The petition also alleged that Susan and Judge Keith have a "contentious history" that dated back to when Judge Keith was employed by the county treasurer and Susan was involved in an audit of his department, and when Susan filed a grievance against him when she served as a county commissioner years earlier.  At a hearing on the petition, Judge Keith disputed Susan's version of the events on the elevator, and denied even realizing that the other person on the elevator was Susan[8] until she started speaking and he recognized her voice. Judge Keith also denied having any past problems with Susan and noted that there had been no prior allegations that their past relationship affected his qualification to preside over this case. Accordingly, he denied Susan's motion for disqualification.

Susan requested a de novo hearing before Chief Judge Burton on her request to disqualify Judge Keith.  The chief judge initially found that Susan's motion for disqualification was not timely filed to the extent that Susan sought disqualification of Judge Keith on the basis of a prior contentious history because the motion was not filed within 14 days after Judge Keith was assigned the case.  He further found that Susan failed to overcome the heavy presumption of judicial impartiality or showed the necessary bias to support disqualification of Judge Keith.  Accordingly, he denied Susan's motion.

In *Cain v Mich Dep't of Corrections*, 451 Mich 470, 494-495; 548 NW2d 210 (1996), our Supreme Court, interpreting former MCR 2.003(B)(1),[9] stated that this rule requires a showing of "*actual* bias," and ["a]bsent actual bias or prejudice, a judge will not be disqualified[.]"  The Court also explained that the bias or prejudice must be "extrajudicial," meaning that "the challenged bias must have its origin in events or sources of information gleaned outside the judicial proceeding." *Id.* at 495.  As a general matter, a trial court's comments directed toward counsel, the parties, or their cases, even if hostile or critical, will not rise to the level of disqualifying bias.  *TT v KL*, 334 Mich App 413, 432-433; 965 NW2d 101 (2020).  A party who asserts that a judge should be disqualified "on the basis of bias or prejudice must overcome a heavy presumption of judicial impartiality."  *Cain*, 451 Mich at 497.

In *Caperton*, 556 US at 881, the United States Supreme Court addressed the extent to which actual bias can impact a party's due-process rights, and stated that the dispositive inquiry is "an objective one" in which

> [t]he Court asks not whether the judge is actually, subjectively biased, but whether the average judge in his position is "likely" to be neutral, or whether there is an unconstitutional "potential for bias."

Similarly, Canon 2 of the Michigan Code of Judicial Conduct provides, in pertinent part:

---

[8] According to Judge Keith, the other person on the elevator was wearing a protective face mask.

[9] The former rule, much like the current rule, stated that a judge is disqualified when "[t]he judge is personally biased or prejudiced for or against a party or attorney."  Thus, the only difference between the former rule and the current rule is the removal of the term "personally" from the current rule.

**A**. Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must avoid all impropriety and appearance of impropriety. A judge must expect to be the subject of constant public scrutiny. A judge must therefore accept restrictions on conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly.

**B**. A judge should respect and observe the law. At all times, the conduct and manner of a judge should promote public confidence in the integrity and impartiality of the judiciary.

Susan argues that Chief Judge Burton erred by focusing on whether Judge Keith was actually biased or prejudiced under MCR 2.003(C)(1)(a), and failing to conduct an analysis under MCR 2.003(C)(1)(b), to determine whether, on the basis of objective and reasonable perceptions, there was either a serious risk of actual bias by Judge Keith impacting Susan's due-process rights as set forth in *Caperton*, or whether Judge Keith failed to adhere to the appearance of impropriety standards set forth in the applicable Canons of the Michigan Code of Judicial Conduct. However, while Susan did cite MCR 2.003(C)(1)(b) in her initial petition, her petition requesting a de novo review of Judge Keith's denial of her motion for disqualification focused on Judge Keith's recollection of what transpired on the elevator on May 9, 2022, and addressed whether Judge Keith was actually biased under MCR 2.003(C)(1)(a). Susan also contended that under Judicial Ethics Opinion JI-57, Judge Keith could not preside over the case if Susan was going to testify as a witness. However, her motion for de novo review before the chief judge did not contain any meaningful analysis or discussion of MCR 2.003(C)(1)(b), *Caperton*, or the appearance of impropriety standards in Canon 2 of the Code of Judicial Conduct. Moreover, at the de novo review hearing, counsel for Susan, when invited to offer arguments on her behalf, stated, "I really don't have anything, much, to add aside from the pleadings and the affidavit of my client, as to what she indicated. And, I think that those items, pretty much stand for themselves, and so that's where I'm at." Notably, counsel did not offer any argument addressing MCR 2.003(C)(1)(b), *Caperton*, or Canon 2.

In ruling on Susan's motion, Chief Judge Burton accurately observed that her motion sought disqualification "[p]rimarily" on the basis of actual bias, and he conducted his analysis accordingly. Chief Judge Burton concluded that the record did not support a conclusion that Judge Keith was actually biased against Susan, so disqualification was not warranted. Because Susan's motion for de novo review focused on the actual bias prong of disqualification under MCR 2.003(C)(1)(a) and did not offer any meaningful analysis or specific arguments directed at MCR 2.003(C)(1)(b), *Caperton*, or Canon 2, Chief Judge Burton appropriately focused his analysis on whether Susan demonstrated actual bias or prejudice. Susan cannot now be heard to complain that Chief Judge Burton did not rule specifically on an issue that she did not bring to the forefront. To the extent that she argues otherwise, this issue is waived. See *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008). Accordingly, we are not persuaded that Chief Judge Burton's failure to specifically address the standards in MCR 2.003(C)(1)(b) requires reversal.

Susan also argues that Chief Judge Burton misinterpreted MCR 2.003(D)(1)(a) and thereby erred by declining to consider her allegation of a "contentious history" with Judge Keith. MCR 2.003(D)(1)(a) provides that "all motions for disqualification must be filed within 14 days of the discovery of the grounds for disqualification." In denying Susan's motion for disqualification,

Chief Judge Burton observed that Susan's motion was not timely filed to the extent that it sought disqualification on the basis of a "contentious history" between Susan and Judge Keith, because that history was based on events that occurred several years earlier, well beyond the 14-day period, and therefore could not be considered in support of Susan's motion. Susan asserts that she demonstrated "a serious risk of bias arising out of personal animus, . . . and [a] violation of Canon 2," on the basis of the incident in the elevator on May 9, 2022, and she timely filed her motion for disqualification within two weeks of that event. Susan contends that, despite her lengthy adversarial relationship with Judge Keith, she was not aware that Judge Keith held a personal animus and was biased against her before May 9, 2022, and therefore, Chief Judge Burton erred by failing to consider their past "contentious history."

Whether Chief Judge Burton erred by failing to consider Susan's evidence of a past contentious history with Judge Keith depends on whether Susan was relying on this past history as "grounds for disqualification." Because the court rule does not define the term "grounds," it is appropriate to consult the dictionary definition of the term to determine its commonly understood meaning. *Wardell v Hincka*, 297 Mich App 127, 132; 822 NW2d 278 (2012). *Webster's New World College Dictionary* (5th ed), p 640, defines "ground," in relevant part, as the "basis; foundation" or the "valid reason, motive, or cause[.]" In the present case, Susan stated in her petition to disqualify Judge Keith that "[a]ll known grounds for Judge Keith's disqualification are included" in Susan's affidavit. Susan also referenced in her petition the May 9, 2022 confrontation in the elevator, and noted that she had "personally criticized Judge Keith when she was an elected County Commissioner and he was counsel to the Wayne County Treasurer." While the majority of the averments in Susan's affidavit involved the May 9, 2022 confrontation in the elevator, Susan also referenced her past contentious history with Judge Keith. Therefore, her self-described contentious history with Judge Keith was also one of the grounds on which Susan relied for seeking Judge Keith's disqualification. Thus, we agree that Susan's motion for disqualification was untimely to the extent that it alleged that her contentious history with Judge Keith supported his disqualification, given that this contentious history was based on events that occurred years earlier. If Susan believed that these past events disqualified Judge Keith from presiding over this case, she should have moved for his disqualification on these grounds within 14 days after he was assigned the case. Accordingly, Chief Judge Burton did not err by failing to consider the alleged contentious history between Susan and Judge Keith as a ground supporting disqualification.

Susan next asserts that Chief Judge Burton erred by concluding that she failed to overcome the heavy presumption that Judge Keith could be impartial, or demonstrate that he was actually biased. We disagree.

We agree that the statement that Susan alleges Judge Keith made to her, which he denied making, "I think you're despicable and I don't know why you're still here," cannot be considered socially appropriate or acceptable. However, the legal question is whether this alleged statement demonstrates that Judge Keith was actually biased against Susan. As our Supreme Court explained in *Cain*, 451 Mich at 495, "disqualification is not warranted unless the bias or prejudice is both personal and extrajudicial." Generally, there must be a showing that the challenged bias originated in events or sources beyond the judicial proceedings. *Id.* If Susan's allegation is accepted as true, the alleged remark was made in an elevator and, as such, qualifies as extrajudicial because it occurred outside the judicial proceedings. However, Judge Keith denied making the remark, disputed Susan's version of the encounter on the elevator, and Susan only relies on her personal

opinion of why Judge Keith said what she claims he said, and the isolated remark, standing alone, does not compel a conclusion that Judge Keith was actually biased against Susan.

Susan asserts that Judge Keith's alleged conduct "falls short of the impropriety standard" set forth in Canon 2. We agree that telling another sitting judge who is a litigant in a pending case that she is "despicable" and stating, "I don't know why you're still here," could be characterized as "irresponsible or improper conduct," unbecoming of a member of the judiciary. Indeed, judges in Michigan also take on the responsibility of "avoid[ing] all impropriety and [the] appearance of impropriety." Code of Judicial Conduct, Canon 2. However, because Judge Keith's alleged statement to Susan in the elevator was isolated, and even according to Susan's version of the events Judge Keith was cordial, polite, and respectful to her when she first entered the elevator and did not mention the pending case, the statement, even though inappropriate, does not create " 'in reasonable minds a perception that [his] ability to carry out judicial responsibilities with integrity, impartiality, and competence is impaired.' " *TT*, 334 Mich App at 433. Accordingly, Judge Keith's disqualification was not required under Canon 2.

For these reasons, Susan has not demonstrated that Chief Judge Burton erred by denying her motion to disqualify Judge Keith. Given our disposition of this issue, it is unnecessary to address Susan's additional argument that, on remand, the entire Wayne Probate Court bench should be disqualified from presiding over this matter under Judicial Ethics Opinion JI-57.

## IV. REASSIGNMENT ON REMAND

In a related argument, Susan argues that this case should be reassigned to a different judge on remand. This issue is inextricably intertwined with Susan's argument that Judge Keith should be disqualified from hearing this case. We disagree that this case should be reassigned.

In *Swain v Morse*, 332 Mich App 510, 537; 957 NW2d 396 (2020), this Court stated that the prevailing concern when considering whether to remand a case to a different trial judge is whether the appearance of justice is best served if a different judge presides over the case. The following factors should be considered:

> [W]hether the original judge would have difficulty in putting aside previously expressed views or findings, whether reassignment is advisable to preserve the appearance of justice, and whether reassignment will not entail excessive waste or duplication. [*Id*. (quotation marks and citation omitted).

A trial judge is presumed to be fair and impartial, and any litigant who attempts to challenge this presumption must overcome a heavy obligation to establish otherwise. *Id*. As this Court recently recognized, reassignment to a different judge is not necessary even if the trial judge reached a wrong legal conclusion, because repeated adverse legal rulings, even if erroneous, are not disqualifying for the trial judge. *Kuebler v Kuebler*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 362488); slip op at 30, lv pending.

Susan asserts that when approving the special fiduciary's requested fees, the trial judge "made no effort to follow the clear case law requirements of making factual findings of reasonableness consistent with the *Smith*/*Pirgu* analysis." Susan also claims that under Judicial

Ethics Opinion JI-57, reassignment is required because Susan would be a necessary witness during an evidentiary hearing "on the issues of [the] reasonableness of fees and/or the appropriateness of sanctions[.]" Susan also relies on the interaction with Judge Keith in the elevator on May 9, 2022, to argue that "the appearance of justice would be better served by reassignment in this case."

We concluded earlier that the trial judge erred by awarding attorney fees in favor of the special fiduciary without conducting an evidentiary hearing or following the *Smith*/*Pirgu* framework, despite that there were factual disputes regarding the reasonableness of the hours bills. However, an erroneous legal ruling is not itself sufficient to require reassignment, and we are not persuaded that Judge Keith would have difficulty putting aside previously expressed views or findings, or would have difficulty following this Court's instructions on how to proceed on remand. Although Susan also asserts that reassignment is necessary to preserve the appearance of justice because she could be a witness at the evidentiary hearing on remand, whether such a situation would actually occur remains to be seen. Thus, it would be premature to determine that reassignment is necessary on this basis. If any issues implicating Judge Keith's continued qualification to preside over this case arise on remand, Susan is free to raise them in an appropriate motion under MCR 2.003. Finally, we have previously concluded that the chief judge did not err by ruling that Judge Keith's disqualification was not required under MCR 2.003(C). Accordingly, we deny Susan's request to reassign this case to another judge on remand.

V. CONCLUSION

The probate court erred by ordering Susan to pay the special fiduciary's legal fees without specifying a statute, court rule, or other authority supporting that decision. The court also erred by failing to conduct an evidentiary hearing and not considering appropriate factors in determining an appropriate attorney-fee award. Accordingly, we vacate the probate court's orders approving the special fiduciary's attorney fees and holding Susan responsible for those fees as a sanction for her litigious conduct, and we remand to that court for further proceedings regarding those matters. On remand, the probate court should conduct an evidentiary hearing to address Susan's factual disputes with the requested fees, and then evaluate the special fiduciary's fee request in accordance with *Smith* and *Pirgu*. Additionally, the probate court must first specify an independent basis for finding that attorney fees are authorized by statute, court rule, or the common law before it can apportion those fees against Susan under *In re Hammond Estate*. Finally, we affirm the chief judge's order denying Susan's motion to disqualify Judge Keith from presiding over this case, and deny Susan's request to order this case to be reassigned to a different judge on remand.

Affirmed in part, vacated in part, and remanded to the probate court for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Michael J. Riordan
/s/ Sima G. Patel

-13-